THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ALEX BOGDANOFF, MAX RYBARCZYK and STEPHEN GRZECHOWIAK, Appellants.

(Argued March 24, 1930; decided May 15, 1930.)

*Thomas L. Newton* and *Stanley G. Falk* for Alex Bogdanoff, appellant. The jury was not selected according to law and the appellant was not afforded a fair trial. (New York State Constitution, art. I, § 2; *People* v. *Thayer*, 1 Park. Cr. 595; *United States* v. *Marchant*, 12 Wheat. 480; *Cruce* v. *State*, 59 Ga. 83; *State* v. *Stokley*, 88 Kan. 381; *People* v. *Caruso*, 170 Mich. 137; *Parsons* v. *Bedford*, 3 Pet. 433; *Hayes* v. *Missouri*, 120 U. S. 68; *People* v. *Cosmo*, 205 N. Y. 91; *People* v. *Dunn*, 157 N. Y. 528; *Stokes* v. *People*, 53 N. Y. 164; *Walter* v. *People*, 32 N. Y. 147; *Wynehamer* v. *People*, 13 N. Y. 378.) The statutes under which the appellant Bogdanoff was indicted and tried were unconstitutional and void and the court

acquired no jurisdiction. (Const. art. 1, § 6; *People ex rel. Battista* v. *Christian*, 249 N. Y. 314; *People* v. *Naughton*, 7 Abb. Pr. [N. S.] 421; *People* v. *Farson*, 244 N. Y. 413; *Weimer* v. *Bunbury*, 30 Mich. 201.)

*Ernest W. McIntyre* and *Charles T. Yeager* for Max Rybarczyk, appellant. The jury was not selected according to law and the appellant was not afforded a fair trial. (New York State Constitution, art. 1, § 2; *United States* v. *Wiltberger*, 5 Wheat. 76; *People ex rel. Battista* v. *Christian*, 249 N. Y. 314.) The denial of the appellant Rybarczyk's motion for a separate trial was not in accordance with the exercise of sound judicial discretion. (*People* v. *Fischer*, 249 N. Y. 419; *People* v. *Snyder*, 246 N. Y. 491; *People* v. *Conrow*, 200 N. Y. 356.)

*W. Bartlett Sumner* and *Daniel J. O'Neil* for Stephen Grzechowiak, appellant. The jury was not selected according to law and the appellant was not afforded the fair trial contemplated by section 2 of article I of the State Constitution, and other rights secured to the appellant by the State and Federal Constitutions were violated on the trial. (*People* v. *Thayer*, 1 Parker Cr. 595; *U. S.* v. *Marchant*, 12 Wheat. 480; *Cruce* v. *State*, 59 Ga. 83; *State* v. *Stokley*, 88 Kan. 381; *People* v. *Caruso*, 170 Mich. 137; *Thymolby's Case*, Dyer, 152b; *Salisbury's Case*, Plowd. 100; *Charnock's Case*, 3 Salk. 81.) The statutes under which the appellant was indicted and tried were unconstitutional and void, and, therefore, the court acquired no jurisdiction to try the appellant. (*People ex rel. Battista* v. *Christian*, 249 N. Y. 314; *People* v. *Farson*, 244 N. Y. 413; *Weimer* v. *Bunbury*, 30 Mich. 201; *People* v. *Corey*, 148 N. Y. 476; *People* v. *Moran*, 246 N. Y. 100.)

*Guy B. Moore, District Attorney* (*Walter F. Hofheins* of counsel), for respondent. The denial of defendants' several motions for separate trials was proper. (Code

Crim. Proc. § 391; *People* v. *Snyder*, 246 N. Y. 491; *People* v. *Fisher*, 249 N. Y. 419.) The jury was selected according to law. (*People* v. *Doran*, 246 N. Y. 409; Code Crim. Proc. § 360.) The statutes providing for simplified indictments are constitutional, and the indictment under which the defendants were tried confers jurisdiction on the court. (New York State Constitution, art. 1, § 6; *Commonwealth* v. *Farmer*, 218 Mass. 507; *Commonwealth* v. *Jordan*, 207 Mass. 259.)

LEHMAN, J. Evidence which is not challenged establishes that on the 27th day of July, 1929, Ferdinand Fechter was killed in the city of Buffalo, Erie county. His death was the result of wounds inflicted by robbers who escaped with a large amount of money which Fechter was carrying from a bank to his home. On September 7th, 1929, the defendant Rybarczyk was arrested. Early the next day the other two defendants were arrested. At the police station they were questioned separately and together. Two made written statements admitting that they had taken part in the robbery. The defendant Rybarczyk made no written statement, but the evidence establishes that he admitted before a number of witnesses that he had taken part in the robbery and that the written statement of Grzechowiak, made in his presence, was true. The grand jury indicted the defendants on September 12th for " murder in the first degree contrary to Penal Law, section 1044." Upon that indictment the defendants were arraigned, tried and convicted.

The District Attorney filed a bill of particulars stating " That Alexander Bogdanoff, Max Rybarczyk, Stephen Grzechowiak and John Doe, on the 27th day of July, 1929, at the City of Buffalo in this County, killed Ferdinand Fechter by shooting him." The defendants did not question before the trial the sufficiency of the indictment or demand any further bill of particulars. At the

trial they moved to dismiss the indictment on various grounds intended to raise the question of whether the indictment of the grand jury, though complying with the form authorized by section 295-d of the Code of Criminal Procedure, chapter 176 of the Laws of 1929, is such a written accusation as accords with the constitutional rights and guaranties of the accused.

In the Federal Constitution and in the Constitution of many of the States, express provision is made, in language similar to that found in section 6, article I of the Constitution of New York, that "no person shall be held to answer for a capital or otherwise infamous crime * * * unless on presentment or indictment of a grand jury." Long before the Constitution of State or nation was adopted, the principle that trial for a felony must be preceded by a sworn accusation of a grand jury was firmly established in the common law. "The right of individual citizens to be secure from an open and public accusation of crime, and from the trouble, expense and anxiety of a public trial, before a probable cause is established by the presentment and indictment of a grand jury, in case of high offenses, is justly regarded as one of the securities to the innocent against hasty, malicious and oppressive public prosecutions, and as one of the ancient immunities and privileges of English liberty." (*Jones* v. *Robbins*, 8 Gray, 329, 344.) Indeed, in that case it was decided that the clause in article XII of the Declaration of Rights of the Massachusetts Constitution "which reads, ' no subject shall be arrested, imprisoned, despoiled or deprived of his property, immunities or privileges, put out of the protection of the law, exiled, or deprived of his life, liberty, or estate, but by the judgment of his peers, or the law of the land,' " must be so interpreted that no subject can be held to answer for an infamous crime except upon indictment or presentment of a grand jury. (See *Commonwealth* v. *Harris*, 231 Mass. 584.)

Doubtless the framers of the Constitution of the State

of New York had never seen or heard of an indictment couched in simple untechnical language. At that time specialized knowledge of legal precedents and the technical craftmanship of a legal artist were required for the drawing of an indictment. Perfection of form was essential to validity. Justice might be delayed or defeated by legalistic insistence upon statement of details which served no useful purpose.

For generations attempts have been made, with varying degree of success, to simplify forms of indictment. Such attempts may not be thwarted by insistence upon the preservation of outworn legalistic formulas. "An indictment, then, within the meaning of the constitution, is nothing more·than what it is defined to be by Blackstone (4 Commentaries, 302), ' a written accusation, of one or more persons, of a crime or misdemeanor, preferred to, and presented by, a grand jury, upon oath.' " (*Wolf* v. *State*, 19 Ohio St. 248.) We may not hold that the framers of the Constitution intended that all the formalities of the old common-law indictments must remain forever inviolate. They intended, undoubtedly, that a written accusation of a crime must be presented by the grand jury before an accused may be held for trial upon a charge of felony. From the days of Magna Charta, the law of the land accorded an accused such protection against unfounded charges. The Legislature cannot dispense with a " written accusation " by the grand jury, but it can prescribe new forms of indictments, and dispense with some of its technical formalities. (See *Lougee* v. *State*, 11 Ohio St. 68; *State* v. *Schnelle*, 24 W. Va. 767.)

In this State, the Legislature long ago provided a simplified form of indictment. " All the forms of pleading in criminal actions, heretofore existing, are abolished; and hereafter, the forms of pleading, and the rules by which the sufficiency of pleadings is to be determined, are those prescribed by this Code. (Code Crim. Pro. § 273, originally section 289 of the Code of Criminal

Procedure as reported by the Commissioners on Practice and Pleadings to the Legislature in 1850.)

It is significant that the Legislature not only abolished all the existing forms of indictment, but also provided its own rules by which the sufficiency of the statutory pleadings should be determined. An indictment is sufficient if those elements which the Legislature deemed essential for the protection of an accused can be understood from its form and language. The report of the Commissioners proposing and defending the new system is itself a plea for the substitution of a logical in place of a legalistic approach to the problem. " They are," they reported, " not ignorant of the fact, that their proposed reform will strike at the root of a system, artificial and absurd in itself, and which is only saved from the contempt it merits, by the frequent use of the names of venerable legal authorities, under whose sanction it has grown and ripened into maturity. * * * Nor will they allow themselves to believe that absurdities and fictions, so glaring and gross in themselves, as to provoke the laughter and contempt of the intelligent, will be permitted to continue longer than until a safe substitute for them can be found."

Though doubtless it is the function of the Legislature, rather than the courts, to devise wise substitutes for obsolescent machinery of the law, at times the courts must determine whether such substitutes are safe and reasonably calculated to serve their purpose. Constitutional limitations at times restrict the legislative powers at least to that extent. " We shall not consider how far the Legislature might go in simplifying indictments before encountering Article XII of the Massachusetts Bill of Rights. We admit that there are limits to its powers in this direction; that, for instance, it could not authorize the omission of allegations necessary to describe a specific crime." (HOLMES, J., in *Commonwealth* v. *Freelove*, 150 Mass. 66.)

Article XII of the Massachusetts Bill of Rights provides

that " No subject shall be held to answer for any crime or offense, until the same is fully and plainly, substantially and formally described to him. * * * And no subject shall be arrested, imprisoned, despoiled or deprived of his properties, immunities, or privileges, * * * or deprived of his liberty or estate but by the judgment of his peers or the law of the land." No simplification of an indictment which might deprive an accused of these constitutional guaranties could be sustained by the courts.

In this jurisdiction the courts have used a similar test in determining the sufficiency of indictments. In *People* v. *Farson* (244 N. Y. 413) the court said, per POUND, J.: " The indictment is sufficient if it identifies the charge against the defendant so that his conviction or acquittal may prevent a subsequent charge for the same offense; notifies him of the nature and character of the crime charged against him to the end that he may prepare his defense; and enables the court upon conviction to pronounce judgment according to the right of the case." In other jurisdictions the test has been at times formulated in other manner, but the test has been essentially the same.

We shall not analyze the multitudinous decisions determining the sufficiency of indictments. In some jurisdictions the courts have strictly construed the language of indictments, and have sustained technical objections which affected no substantial right of an accused. In New York and other jurisdictions it has been noted that the courts, acting under command of the Legislature, measure the sufficiency of indictments solely in relation to the substantial rights of the accused, guaranteed either by the express language or the fair intendment of the Constitution. Even so, the present indictment is certainly not sufficient if measured by any test heretofore applied by the courts of this State, or, indeed, of any other jurisdiction.

Those tests, however, have been devised and applied when indictments constituted the sole formulation of an accusation, which the accused could demand as of right before he was held to answer. True, bills of particulars might at times·be granted in the discretion of the court, but constitutional rights cannot be made dependent upon the favor of a court. They may be asserted as a matter of right. Even when a bill of particulars was granted, it did not become part of the record. (*Dunlop* v. *United States*, 165 U. S. 486.) In determining the validity of a law changing the form of the indictment, the courts base decision upon their conclusion whether full protection is afforded to the traditional, fundamental rights of the accused. The problem of the sufficiency of an indictment assumes a new aspect when the Legislature provides that omissions from an indictment may be supplied by a bill of particulars which becomes part of the record of the accusation.

In the new chapter of the Code of Criminal Procedure which authorized simplified indictments, the Legislature has provided a new method of protecting the rights of an accused. No longer may the court grant or withhold a bill of particulars in its discretion. Now the Legislature has commanded that " upon the arraignment of the defendant, or at any later stage of the proceedings, the court *shall*, at the request of the defendant, direct the district attorney to file a bill of particulars of the crime charged." (Code Crim. Pro. § 295-g.) It must state such particulars as may be necessary to give the defendant and the court reasonable information as to the nature and character of the crime charged.

In Massachusetts the Legislature has made similar provision for a bill of particulars which may be demanded by an accused as of right. (R. L. ch. 218, § 39.) There it has been held that now the indictment and bill of particulars must be read together. The bill of particulars thus becomes part of the record. (*Commonwealth* v.

*Howard,* 205 Mass. 128; *Commonwealth* v. *Peakes,* 231 Mass. 449, at p. 456.) If in truth the bill of particulars may be read together with the indictment and becomes part of the record, then it would seem that no constitutional rights of the accused have been infringed by the statute now under consideration.

In spite of the meticulous search in the remote past by the courts for technical imperfections which might render an indictment insufficient, where the pleader had sufficient skill to follow common-law forms accurately, the indictment might in fact give to an accused little information of the nature or cause of the accusation. " General terms of law having a common law significance seldom particularise the act charged." (*People* v. *Farson, supra.*) Certain offenses might be charged in such general terms that a bill of particulars was customarily required. (See *Lambert* v. *People,* 9 Cow. 578, at pp. 586 and 587; also *Rex* v. *Hamilton,* 7 Car. & Payne, 448; *Reg.* v. *Stapylton,* 8 Cox C. C. 69; *Rex* v. *Bootyman,* 5 Car. & Payne, 300; 9 Halsbury Laws of England, 338.) If, now, the indictment and the bill of particulars, which a defendant can demand, may be read together and constitute the written accusation which the grand jury has made and which the accused must meet, the right of an accused to be informed of the nature of the accusation against him receives more adequate protection under the statute than at common law, and an accused has been deprived of no fundamental or substantial rights. (*Commonwealth* v. *Jordan,* 207 Mass. 259; *Commonwealth* v. *Farmer,* 218 Mass. 507.)

In Massachusetts, as we have pointed out, the courts have held that the indictment and bill of particulars must be read together and together constitute the formulation of the accusation which the accused must answer. Courts and text-book writers have in the past upheld the rule that an indictment must contain not only a certain description of the crime charged, but also " *a statement of the facts* by which it is constituted, so as to identify the

accusation, lest the grand jury shall find a bill for one offence, and the defendant be put upon his trial in chief for another, without any authority." (Chitty's Criminal Law, vol. 1, p. 169; *Lambert* v. *People, supra.*) Under the Massachusetts statute (R. L. 218, § 17) the indictment must contain " a plain and concise description of the act which constitutes the crime, or the appropriate legal term descriptive of such act, without a detailed description thereof." The function of the bill of particulars under the Massachusetts statute is to supply additional information concerning an accusation that a person has done an *act* constituting a crime. In the case here under review the indictment charges only the crime of " murder in the first degree." When or where or by what acts the crime was committed is left unsaid. There is nothing on the face of the indictment which identifies the specific accusation which the grand jury has made, or removes the possibility that under the bill of particulars the defendants might be put on trial for a different homicide from that of which they were accused by the grand jury. Certainly, the indictment and the bill of particulars cannot be read together as the formulation of an accusation of crime unless in fact they refer to the same crime.

Even at common law the possibility was not entirely excluded that a man might be placed on trial for an offense for which he had not been indicted. Though the indictment was required to set forth the facts so far as known to the grand jury, if the name of the victim of homicide, rape or other crime was in fact unknown to the grand jury, the indictment might charge the accused with a crime committed upon a person or persons to the grand jury unknown. Then the indictment might not conclusively show that the crime for which the accused was placed on trial was the same crime described in the indictment. It did not exclude entirely the possibility that the State might bring the accused to trial for a crime committed upon a person or persons other than the person or persons

intended by the grand jury to be described in the indictment. That circumstance would not render the indictment itself invalid (Chitty's Criminal Law, vol. 1, pp. 212, 213), but if it should appear that the name was or might have been known to the grand jury, then the issue could be litigated as to whether the jury did know the name. (*Commonwealth* v. *Glover*, 111 Mass. 395.) If it did know the name, then of course the crime described in the indictment would not be the crime for which the accused was tried. (Bishop's New Criminal Procedure [2d ed.], vol. 2, § 552.)

In the case which we are now reviewing, there can be no real doubt that the grand jury intended to charge the defendants with the murder of Fechter for which they have been tried and convicted. The defendants never claimed otherwise. They point to no substantial right, guaranteed to them by the Constitution, which has been prejudiced by failure to state in the indictment all the essential elements of the crime charged. They confessed to a crime, and the grand jury found an indictment against them for that crime, although the indictment may fail to describe that crime in language which without extraneous proof identifies the charge with the crime confessed and proven. None the less the conviction cannot stand if the defendants by the form of the indictment have been precluded from challenging the assertion of the State that the crime with which they have been charged by accusation of the grand jury is the same crime for which the bill of particulars has been filed, and for which they have been tried and convicted. Though we may feel certain that in this case such a challenge would have been abortive, the accused could not under the Constitution be deprived of the right to make the challenge.

Of course, to the extent that an indictment, unaided by the bill of particulars, fails to set forth all the elements of a crime, it is impossible to determine in any case with certainty, from the face of the indictment alone, that the

grand jury has accused a defendant of the very crime specified in the bill of particulars. Doubtless where an indictment contains a statement, even though incomplete, of the acts constituting the crime charged, as is required in Massachusetts, the danger that an accused can be put on trial for a crime not charged in the indictment is greatly reduced. Nevertheless the difference is one only of degree, and logically it would seem that if the courts give effect to differences of degree in determining whether a bill of particulars may supply omissions in an indictment, the decisive consideration in each case must be whether failure to set forth in an indictment all the essential elements of the crime which the accused is held to answer, has resulted in depriving the accused in that case of a substantial right and subjects him to actual danger of trial upon a charge upon which he has not been indicted.

Indeed, if we discard, as we should, a legalistic approach to the consideration of the sufficiency of an indictment, we can reach no other result. In every case where there is room for doubt whether the grand jury has in fact indicted an accused for the crime for which he is held, the accused must be able to challenge the right of the State to hold him under the indictment. What is written in the indictment must be read in the light of the circumstances under which it was found. If its language is specific and precise, there may be no need for construction. If its language is loose and general, then extraneous evidence may be necessary before we can decide what was intended by the language used. An accused, however, should not be heard to complain that a constitutional right has been infringed by form of an indictment if that form does not preclude an accused from asserting in some manner every substantial right he may have. A written accusation by the grand jury may not be disregarded or amended in order to permit a trial upon a crime not charged by the grand jury, but omissions in an indictment should be supplied or errors in

description cured in order to show upon the record that accusation and trial are for the same crime.

Though perhaps this court has not had occasion to assert that rule in definite terms, it is implicit in our entire course of decisions upon the scope and function of indictments. We have held that an indictment may not be amended to change the substantial elements and nature of the crime charged in the indictment. (*People* v. *Geyer*, 196 N. Y. 364.) On the other hand, we have held that error in description or name may be corrected or disregarded. (*People* v. *Johnson*, 104 N. Y. 213.) So, too, where a defendant is indicted by a fictitious or erroneous name his true name may be inserted whenever that is discovered. (Code Crim. Pro. § 277.) (See *People* v. *Seidenshner*, 210 N. Y. 341.)

That a District Attorney should ever, by filing a bill of particulars, seek to hold an accused for a crime for which he has not been indicted is improbable. The provision of the Code of Criminal Procedure, section 271, requiring that the names of witnesses be indorsed upon the indictment would, in most cases, at least, prevent such an error. It may be urged that the Code of Criminal Procedure does not make any provision for challenging the right of the State to hold an accused to answer a charge specified in the bill of particulars, upon the ground that the indictment does not cover the same charge. The answer is that the courts have an inherent power to protect the constitutional rights of an accused who is held without proper and sufficient accusation of a grand jury. (See *People* v. *Glen*, 173 N. Y. 395.) The accused may at any time, at least before conviction, assert his constitutional rights to be discharged from custody upon a charge of felony where it does not appear that the grand jury has indicted him upon the charge for which he is held. If challenge is made on that point the State must meet that challenge.

In a recent case (*United States ex rel. Mouquin* v. *Hecht*,

22 Fed. Rep. [2d] 264) an accused named Louis C.
Mouquin, who was held under an indictment in form found
against Louis A. Mouquin, demanded his discharge.
There, the question was whether the grand jury in fact
described the person held, though the description was
inaccurate, and other evidence was necessary to establish
identity. The court, speaking through LEARNED HAND,
Circuit Judge, said: " The meaning to be attributed to
their [the grand jury's] words may, in case of doubt, be
found by looking at the circumstances under which they
are uttered. This is a universal canon. Now the only
circumstances relevant to the words used are the evidence
before them when they find the indictment, for it is from
these alone that they get any acquaintance with the
subject."

In that case the court held that an accused cannot
avail himself of a plea that he is held without indictment,
where the description of his person was insufficient to
identify him as the person accused, till extraneous proof
supplied the deficiency. Analogy to statutory and judicial
rules created to meet similar situations supports the deci-
sion. In Massachusetts, as in this State, where a defend-
ant has been indicted under a fictitious name because his
true name was unknown, the true name may be inserted
whenever discovered. (*Commonwealth* v. *Gedzium*, 259
Mass. 453.) That is true even though by mistake, some
person other than the defendant whom the grand jury
intended to describe had previously pleaded to the indict-
ment. (*Commonwealth* v. *Berley*, 254 Mass. 556.) Though
extraneous evidence be necessary to identify a defendant,
insufficiently or erroneously described in the indictment,
it seems clear that an accused cannot claim that he is held
without indictment where such evidence proves that he is
the person the grand jury intended to accuse, and the record
is amended accordingly. Similarly it seems clear that an
accused is not held without indictment where extraneous
proof can be adduced which shows that an accusation of

crime, though indefinite in form, was intended and calculated to describe the crime for which the accused is held. Especially is that true where no claim has been advanced that the grand jury could have intended any other accusation by the indictment. The courts should be astute and eager to preserve all constitutional rights. They may not insist upon the preservation of old forms for the assertion of such rights when those rights can be adequately protected under new forms devised by the Legislature.

It is said that at times a defendant may not choose to request a bill of particulars to supplement the form of indictment used, and that then the record would not show the specific crime for which the defendant has been indicted. That may be true, but a voluntary failure to assert a right provided by statute constitutes a weak foundation for a claim that the statute deprives the accused of a constitutional right. (*Patton* v. *United States*, 281 U. S. 276.) At all times it was possible that the record might not show that an indictment charged the particular crime for which a defendant was convicted or indeed any crime, if the defendant chose not to challenge the sufficiency of the indictment. The conviction stood if opportunity to challenge had not been denied. (*People* v. *Wiechers*, 179 N. Y. 459.)

The new forms may at times prove unwise. Doubtless if district attorneys insist upon using the form employed here, they will at times be unable to meet a challenge to the sufficiency of the description of a crime. Extraneous evidence may still leave uncertain at times whether an indictment for " murder " or " larceny " covers one crime or several. The evidence presented to the grand jury might cover several connected homicides or a series of defalcations with nothing to demonstrate which crime of the series was intended to be the subject of the charge. Then the courts will be compelled to discharge the accused. Too often the courts are called upon to point out that innovation does not necessarily imply

improvement. With equal ease and with greater certainty the District Attorney might have used, if he had chosen, a more precise form of indictment not subject to any possible claim that the indictment did not describe the same crime covered by the bill of particulars. There must in every case be identity of accusation, and the indictment must describe the crime upon which the accused is held. It is the duty of the District Attorney to formulate that description with such precision that it cannot be successfully challenged. Our decision that in this case the conviction must be sustained where no claim is made that the charge in the indictment of murder in the first degree could have been understood to have any meaning other than a charge of the murder of Ferdinand Fechter, may not be regarded as a judicial approval of the form of indictment used. It is sufficient here; it might prove insufficient in any case where doubt as to its meaning could exist. Whatever form is used, an indictment must still remain a written accusation of a crime by the grand jury. Reasonably precise formulation should render it unnecessary to resort to extraneous proof, yet a faulty formulation of an indictment cannot require a reversal of a conviction unless there is doubt as to the meaning of the indictment.

The defendants have raised other questions upon this appeal. We have considered them, and find no ground for reversal. They have been convicted after a fair trial upon evidence which is clearly sufficient to sustain a conviction. The court did not abuse its discretion in refusing to sever the trial. (*People* v. *Snyder and Gray*, 246 N. Y. 491; *People* v. *Fisher, Helfant and Dreitzer*, 249 N. Y. 419.) All questions concerning peremptory challenges upon joint trials were considered and decided in *People* v. *Doran* (246 N. Y. 409). No reversible errors were committed in the conduct of the trial.

The judgment of conviction should be affirmed as to each defendant.

CRANE, J. (dissenting). What is an indictment? The Constitution of the State of New York (Art. I, § 6) reads: " No person shall be held to answer for a capital or otherwise infamous crime * * * unless on presentment or indictment of a grand jury." This entire section was in the Constitution of 1821, and has remained unchanged by the various Constitutional Conventions which have met since that time. The Constitution of the United States, by the Fifth Amendment, reads: " No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury." What does this word " indictment " mean? In framing constitutions, the foundation of all government, binding upon courts as well as Congresses and Legislatures, words are chosen with a carefulness and an exactness seldom found in the drafting of other instruments. Meanings are not left in a fog, to be defined by subsequent generations. The framers of our Constitutions knew what they were doing; they were well acquainted with the evils under which humanity had suffered, and they organized our government with these evils pressing on their minds and hearts. No man shall be held to answer for a capital or otherwise infamous crime, except on an indictment of a grand jury. Did our forefathers know what an indictment was? When using this word in the Constitution, they meant the form of accusation with which they were acquainted, the one in common use at the time, and which was then known to the law as an indictment. This legal accusation consisted of two essentials, from which there has never been a departure for the past century. *First*, the accused is charged with having committed a crime, known to the law; and *second*, the act which he did constituting that crime is stated. These are the essentials of an indictment, and without *both* these elements there is no indictment which the Constitution of the United States or this State recognizes. The Code of Criminal Procedure of

the State of New York, in defining an indictment, has merely stated the meaning of the word as used in the Constitutions and exemplified by all authorities. The provisions of sections 274 and 275 provide that the first pleading on the part of the People is an indictment which must contain a plain and concise statement of the *act* constituting the crime, without unnecessary repetition.

" The object of the indictment is, *first*, to furnish the accused with such a description of the charge against him as will enable him to make his defense, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause; and, *second*, to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had. For this, facts are to be stated, not conclusions of law alone." ( *United States* v. *Hess*, 124 U. S. 483, 487.) The indictment is the charge of the State against the defendant, the pleading by which he is informed of the fact, and the nature and scope of the accusation. (*Matter of Wilson,* 140 U. S. 575, p. 585.) (See, also, *United States* v. *Behrman*, 258 U. S. 280, 288.) Although the Fifth Amendment of the United States Constitution only applies to the United States courts, we must assume that the word " indictment " in the Federal Constitution has the same meaning as the same word in the State Constitution. By amendment to the State Constitution, the grand jury may be abolished and an information presented by the District Attorney to the court may take the place of an indictment. Even then, however, the information must state not only the crime of which the accused is charged, but the nature of the act, or the facts constituting the crime. (*Hurtado* v. *California*, 110 U. S. 516.) The New York State Constitution has not been amended in this particular, and the requirement still is that for a felony the accused must be charged in an indictment by a grand jury. An indictment is an instrument required by the Constitution, not by the Leg-

islature, stating the crime and the nature of the act constituting it. Such has been the uniform rulings for the United States courts, and such has been the law of every State of this Union, where an indictment was required by its Constitution. (See the collection of cases, Joyce on Indictments [2d ed.], § 281, p. 310.) Cooley on Constitutional Limitations (vol. 1 [8th ed., Carrington], p. 636–7) says that the accusation, whether it be an indictment or information, must be sufficiently specific, fairly to apprise the defendant of the nature of the charge against him, so that he may know what he is to answer and so that the record may show for what he is put in jeopardy. (See, also, Story on the Constitution, vol. 2 [4th ed.], p. 544.)

That an indictment to-day means just what it did at common law in its essential parts, but without its tautology and verbiage, is the statement found in such cases as *State* v. *Fancher* (71 Mo. 460, 463); *State* v. *Corson* (59 Me. 137, p. 140); *Cathcart* v. *Commonwealth* (37 Penn. St. 108, 114); *Newcomb* v. *State* (37 Miss. 383, 397); *Mc-Laughlin* v. *State* (45 Ind. 338, 343); *Noles* v. *State* (24 Ala. 672, 691); *Lambert* v. *People* (9 Cow. 578, 609); *People* v. *White* (24 Wend. 520, 570); *State* v. *Davis and Quigg* (39 R. I. 276).

The indictment at common law was very exact in stating all the details and incidents of the alleged crime; it was long and verbose, filled with repetitions and legal phrases. Minor misstatements and errors proved fatal, but all of this has long since passed into history, as for a quarter of a century in this State the short form of indictment has been used, which merely states the crime and the substance of the act constituting the crime, in clear and concise language, and as our Code of Criminal Procedure says, without unnecessary repetition. For all the major offenses, like murder, larceny, burglary, rape and the like, forms which have been standardized by custom have been used, against which all technical

objections have failed. When the indictment said that John Jones committed the crime of murder in the first degree, in that on the first day of June, 1928, he feloniously killed Jim Smith, with premeditation and intent to kill, this was sufficient to meet all the requirements of the word "indictment," as used in the Constitution. The nature of the crime and the act constituting it were here stated. Whatever influenced our State Legislature to think it could improve upon these customary short forms of indictment is a matter of speculation. Not one of them, so far as my experience and information lead me to believe, has ever been dismissed as insufficient.

However, the Legislature, with a worthy desire at least to satisfy the critics of the administration of the criminal law, made changes in the form of the indictment, apparently thinking that any change, in and of itself, was evidence of improvement.

In the adoption of chapter III-A, added to the Code of Criminal Procedure by chapter 176 of the Laws of 1929, the Legislature has radically amended the form of the indictment, so that it is no longer the accusation intended by the Constitution. The indictment, or the written paper, signed by the foreman of the grand jury or the District Attorney, has always contained, and by the Constitution of the State was required to contain, not only the name of the crime with which the defendant was charged, but also the act constituting the crime. Now the Legislature says that an accusation leaving out the act constituting the crime shall be an indictment. The Constitution of the State of New York cannot be amended in this fashion. Giving to a word in the Constitution by act of legislation a meaning which it never had is violating our fundamentals of government under legal forms. An indictment is an indictment, and the Legislature has no power to make something else an indictment by merely calling it such. An indictment, as used in the Constitution, had in the minds of our people and the framers of

every one of our Constitutions since 1821, a definite meaning. It had an identity of being as much as a sheep, a goat or a horse is a distinct species of creation. The nature of the instrument could not be changed by act of the Legislature any more than the Legislature can make a sheep a goat, by calling it such.

While the Legislature undoubtedly has authority to abbreviate and simplify and to a certain extent modify and change the forms of indictments, yet its authority in this respect is limited, and it cannot make an indictment valid and sufficient, in which the accusation is not set forth with sufficient fullness to enable the accused to know what the matter is which he has to meet, and enable the court to see without going out of the record, that a crime has been committed. Where it is provided, as in this State, that a person shall answer a criminal charge of felony only on an indictment or information, such provision places it beyond the power of the Legislature to dispense with the statement in the indictment of the description of the offense. (Joyce on Indictments, § 56; *State* v. *Clay*, 100 Mo. 571, 582; *State* v. *Corson, supra; Noles* v. *State, supra*; *Brunson* v. *State*, 70 Fla. 387; *People* v. *Clark*, 256 Ill. 14; and cases heretofore cited.)

Under this chapter III-A of our present Code of Criminal Procedure, adopted in 1929, the form of the accusation, which is now called the " indictment," may accuse the defendant of murder, arson, burglary, larceny, libel, without stating more. The act constituting the offense need not be alleged. Whom the defendant killed, or what he stole, or the act he did, is not required to be stated. The accused is faced with a charge of crime, without knowing what it is. Our criminal procedure, instead of progressing, is going backward, and in the craving for change we have removed all safeguards which have been considered necessary since the days of Star Chamber proceedings.

To meet these obvious objections, the Legislature, in

section 295-g of the Code of Criminal Procedure, provided that upon the arraignment of the defendant, the court shall, *at the request* of the defendant, direct the District Attorney to file a bill of particulars of the crime charged. But such a bill will state the acts which the District Attorney says the defendant committed, and not what the grand jury accuses him of having done. If we were meeting the requirements of due process of law, required by the Fourteenth Amendment of the United States Constitution, a presentment by the District Attorney, instead of an indictment or a bill of particulars furnished by the District Attorney might be sufficient. We are not dealing, however, with the due process of law provision of the Federal Constitution; we are acting under our own State Constitution, which says that this information must be given by the grand jury in the form of an indictment. A bill of particulars is not now, and never has been a part of the indictment. Not having been found on the oath of the grand jury, a bill of particulars cannot cure the failure of the indictment to sufficiently inform the defendant of the charge made against him. (Joyce on Indictments, § 326; *State* v. *Van Pelt*, 136 N. C. 633; *Commonwealth* v. *B. & O. R. R. Co.*, 223 Penn. St. 23; *State* v. *Lehigh Valley R. R. Co.*, 94 N. J. L. 171; *United States* v. *Bayaud*, 16 Fed. Rep. 376; *Pine and Scott* v. *Commonwealth*, 121 Va. 812; *Commonwealth* v. *Davis*, 11 Pick. [Mass.] 432.) The charge against an accused person is not that he has committed crime generally, like murder or larceny, but that he has committed some *act* which is made a crime by law. That the bill of particulars can never be considered a part of the indictment is reasonable. Suppose, under this emasculated form of indictment which we are now discussing, a defendant is charged with larceny, and without demanding a bill of particulars, he pleads guilty. For what is he to be sentenced; and after sentence, of what has he been convicted? There are many different kinds of larceny defined by our Penal Law. The crime now covers

larceny by trick and device, larceny by false representations, larceny through embezzlement, larceny by illegally using an automobile. (Penal Law, §§ 1290–1313.) If the defendant, after sentence on his plea, is again indicted for the crime of larceny, how can he plead and prove prior conviction for the same offense? The New York Constitution provides: " No person shall be subject to be twice put in jeopardy for the same offense." (Art. I, § 6.) To be sure, the grand jury minutes may be examined, but any one familiar with investigations by grand juries knows that frequently the charge of larceny may cover many items of book accounts or misappropriations over years of time. Every investigation of a bank or trust company or of a corporation covers innumerable transactions. If out of such investigation, an officer or director is accused of larceny and pleads guilty, without demanding a bill of particulars, which one of all these items or occurrences forms the basis of the charge and of his punishment? The same reasoning applies to criminal libel. The written matter may appear in a book or an editorial or a news item; which part of it does the grand jury consider the crime? Is the grand jury to determine, or the District Attorney? Our Constitution says that the grand jury shall determine, and accuse the defendant accordingly. The whole thing sums itself up in this: the bill of particulars provision leaves the District Attorney to determine of what the defendant is accused; he is the one chosen to speak for the grand jury, whereas the Constitution requires the grand jury to be the accuser and speak for itself.

While the least fairness to any person accused of crime requires that the information or the indictment on which he is arrested shall state the act or thing which he is accused of doing, another reason, equally as urgent, requires this information to be given in the indictment or the information. To determine when a defendant is subjected to second jeopardy for the same offense, there must be no uncertainty about the act for which he was

previously punished. It does not meet this requirement to say he was punished for larceny or assault or libel. He was punished for an act, for a deed which, at a specific time and place, constituted the crime. Therefore, the act must be stated in the accusing charge to guide subsequent courts and prosecuting attorneys. (*State* v. *Corson; United States* v. *Behrman, supra.*)

No case can be found in the United States courts or in the court of any State in this Union where a written accusation has been held to be an indictment which does not state the act or the deed which the defendant committed. Even the procedure in England so frequently and publicly cited for its simplicity and efficiency, requires the indictment not only to state the offense, but the particulars constituting it. (The Indictments Act of 1915, 5 & 6 George V, ch. 90.)

Unfortunate indeed, that any question should arise in these cases over the sufficiency of the indictment. The defendants committed an atrocious murder, and are clearly guilty. The People of this State and nation have many times been justified in showing impatience with the technicalities and refinements of the criminal law, whereby guilty men have escaped their just punishment. I heartily sympathize with these criticisms, and yet, there are certain fundamental principles which must be followed and obeyed, or else we have chaos, and not law. Every one instinctively feels that a person arrested for a crime and taken to jail should know at once the thing which he is accused of doing, the act which he is said to have committed. This feeling is part of our inheritance from those who struggled against oppression and false and secret accusation, who were subjected to political revenge and the suspicions of State. Whatever may be the cause for this feeling, we know that at the formation of our government, it was written for both nation and State: " No person shall be held to answer for a capital or otherwise infamous crime, * * * unless on pre-

sentment or indictment of a Grand Jury;" and we also know that the indictment has always been an instrument charging a crime and stating the nature of the offense. Nothing could be fairer, nothing more fundamental. Following the mandates of this Constitution, which the judges of this State must maintain in all its integrity, I am persuaded that this indictment is bad in not being a legal accusation against these defendants.

The judgment of conviction should be reversed, the indictment dismissed, and the defendants remanded to the county jail to await a new indictment and a new trial.

CARDOZO, Ch. J., POUND and O'BRIEN, JJ., concur with LEHMAN, J.; CRANE, J., dissents in opinion in which KELLOGG and HUBBS, JJ., concur.

Judgment affirmed, etc.