## STATE v. TACCONI et al.

No. 6881.   Decided July 22, 1946.   (171 P. 2d 388.)

See 42 C. J. S., Indictment and Information, sec. 90; 42 Am. Jur., 276.

*Arthur Woolley* and *Thatcher & Young*, all of Ogden, and *Warwick C. Lamoreaux*, of Salt Lake City, for appellants.

*Glen W. Adams,* Dist. Atty., of Ogden, *Grover A. Giles,* Atty. Gen., and *Herbert F. Smart,* Asst. Atty. Gen., for respondent.

McDONOUGH, Justice.

Defendants were indicted, convicted and sentenced on a charge of keeping a house of ill-fame. They appeal assigning as grounds for reversal: (1) That the indictment was insufficient in that it failed to inform accused of the nature and cause of the accusation against them, the contention being advanced that the statute authorizing the short form indictment is unconstitutional. (2) That the evidence is insufficient to support the verdict. (3) That the court misdirected the jury. We shall discuss the assignments in the order stated.

In *State* v. *Hill,* 100 Utah 456, 116 P. 2d 392, we held that the short form of information authorized by Sections 105-21-8 and 105-21-47 of our Code does not violate Art. I, Sec. 12 of our state Constitution which specifies that the accused shall have the right to demand the nature and cause of the accusation against him and to have a copy thereof. See also *State* v. *Anderson,* 100 Utah 468, 116 P. 2d 398; and *State* v. *Spencer,* 101 Utah 274, 117 P. 2d 455. What we said in *State* v. *Hill,* supra, disposes of the first assignment unless the reasoning therein relative to the constitutional validity of the statute as applied to an information is inapplicable in the case of an indictment. That

it is inapplicable is the contention of appellants. They stress the fact that where prosecution is by information, the accused is entitled to be informed by complaint and bill of particulars of the nature and cause of the accusation and that he is also entitled to a preliminary hearing wherein the evidentiary facts relating to the charge are revealed; whereas, under accusation by indictment he is not so informed. But neither is one who is accused by an indictment fully complying with the statutes as they were before the adoption of those assailed. The fact that in the latter case he is sufficiently informed by the indictment of the nature and cause of the accusation to meet the constitutional requirement while, where the short form indictment is used, he is given the same or more information by the indictment and the bill of particulars, which under the statutes he has a right to receive upon demand, is no infringement of the cited constitutional provision. But appellants assert that where the short form of indictment is returned by a grand jury and the bill of particulars is furnished by the district attorney, the accused may be tried for a different crime than that for which he was indicted. Thus, in the instant case since the indictment did not specify what house defendants were accused of keeping, the bill of particulars might specify one which the jurors did not have in mind. To the effect that such possibility was not entirely excluded at common law and that such circumstance would not make the indictment itself invalid, see *People* v. *Bogdanoff*, 254 N. Y. 16, 171 N. E. 890, 69 A. L. R. 1378.

In other jurisdictions where short forms of indictment and information are authorized, to be accompanied by bills of particulars upon demand of the accused, the short form of indictment has been upheld in principle as constitutional as well as the short form of information. In *People* v. *Bogdanoff*, supra, it was declared that while the statute may not abolish presentment or indictment, it may provide for a change in the form of indictment by use of a short form. In *Commonwealth* v. *Farmer*, 218 Mass. 507, 106 N. E. 150, and *Commonwealth* v. *Howard*, 205 Mass. 128,

91 N. E. 397, it was held that a defendant accused by short form of indictment, who is furnished a bill of particulars which informs him with sufficient particularity of the accusation to enable him to prepare his defense, is not denied his constitutional right to be informed of the nature of the accusation. Other cases are cited in *State* v. *Hill*, supra.

As pointed out in *People* v. *Bogdanoff*, supra, where a defendant is accused by a long-form of indictment, he may be less able to prepare his defense from facts disclosed therein than he is by a short form of indictment aided by a sufficient bill of particulars.

The assignments of error attacking the sufficiency of the indictment are overruled.

Appellants contend that the court should have directed a verdict in favor of each of them by reason of the insufficiency of the evidence. They argue that the prosecution failed to produce any direct evidence within a period not barred by the statute of limitations, that defendants kept a "house of ill-fame resorted to the purpose of prostitution or lewdness." There can be no question, under the evidence hereinafter detailed, that defendants for some months prior to July 1, 1941, kept a house of ill-fame resorted to for prostitution. The charge here, however, is of a time subsequent to that date, the bar of the statute of limitations precluding prosecution of acts prior thereto. Appellants contend that the court committed prejudicial error by admitting in evidence testimony as to operation of the place prior to July 1, 1941.

The evidence introduced by the state was to the following effect: That defendant, Pete Tacconi, held a lease on the Golden Hotel in Ogden up to September 1, 1941, and that he was seen at such place after July 1, 1941. On September 1, 1941, the hotel was leased to defendant Louise Wilson. A colored maid was employed at the hotel in 1940 and the early part of 1941. She testified that she answered the door-bell, directed men into the parlor, and then called the "girls" who, she said, were prostitutes. A girl then went into room with a man. The maid received money from the

girls and brought it into the bedroom of defendant Louise Wilson where it was placed in a drawer, and a notation was made on a sheet of paper as to how much money was received from each girl. At the end of the day the four girls came into the room of Louise Wilson and the money was divided with them. Defendant Tacconi was seen talking to these girls during this period of time, as well as to men who called at the hotel, although the witness was unable to repeat any of the conversations.

As to the time subsequent to July 1, there was evidence that the place was visited at frequent intervals by police officers; and that said officers talked with defendant Louise Wilson and instructed her to have the "girls" report each week to the Board of Health. It was the policy of the police department to require girls who were believed to be prostitutes to report each week to the Board of Health. The officers testified that those girls were reputed to be prostitutes, and that the place had a reputation as a house of ill-fame; and that defendant Louise Wilson was arrested on several occasions for vagrancy and on a charge of being a dissolute person. In each instance bail was forfeited. Evidence adduced relative to these arrests was such as to permit a reasonable inference being drawn to the effect that such periodic forfeiture of bail was but an indirect method of licensing houses of ill-fame.

In contending that the evidence outlined does not warrant a verdict of guilty, appellants argue that the evidence adduced concerning the conduct of the premises in question prior to July 1, 1941, was inadmissible having relation to acts, prosecution of which is barred by limitations. ■ Consequently, they assert, they were compelled to defend against alleged conduct not charged in the information and for which they could not be prosecuted. They argue that if this evidence is disregarded there is left only the evidence of repute, which was inadmissible, and that having to do with the conversations of defendant, Wilson, with the police officers and that relating to her periodic arrest, which is not sufficient.

Apparently, the state adopted the theory that having once shown that the defendants operated the place as a house of ill-fame, in order to make out a prima facie case for the jury, it need only present such evidence as would indicate continuity of the unlawful operations. The purpose of such evidence was not to convict the defendants of a substantive offense committed prior to July 1, 1941, but as tending to illustrate or explain their conduct subsequent to such date. Knowledge of the character and operations of the place as well as their intent to keep the place as a house of ill-fame resorted to for the purpose of prostitution would be amply proved during the period barred from prosecution by the statute of limitations; and the bar of prosecution would not preclude the state from showing the prior criminal practices to establish their knowledge and intent. Of course, proof that a place was kept as a house of ill-fame at a time too remote from the period specified in the bill of particulars, might have little evidentiary value, and necessitate much greater proof to show continuity of the conduct over into a period of time as to which prosecution were not barred by limitations.

The argument that such evidence is not competent is untenable. The more remote the operations, the less weight it might have as evidence. The defendants are not prosecuted for such acts during a period barred by limitations. Such evidence is permitted to show knowledge and intent, and to show relationship with subsequent activities which would tend to show continuity of the same kind of operations over into a period of time when prosecution would not be barred.

The evidence of reputation of the house in question as being a place resorted to for purposes of prostitution was admissible. True, repute was not a matter in issue; that is, "house of ill-fame," as used in the statute is synonymous with "bawdy house," and it is the character of the establishment and not its repute which must be proved. But its repute may be used in connection with other evidence of its actual character to establish that fact. See:

Wigmore on Evidence, 3rd Edition, § 1620; *Hunter* v. *United States*, 4 Cir., 272 F. 235; *State* v. *Hendricks*, 15 Mont. 194, 39 P. 93, 48 Am. St. Rep. 666; *State* v. *Peters*, 72 Mont. 12, 231 P. 392; *Anzine* v. *United States*, 9 Cir., 260 F. 827.

"While there may have been in the past some conflict of opinion as to the competency of proving the reputation of the house upon a charge of keeping a bawdy house, or a house of ill-fame, it is now settled both by the weight of opinion, and reason that such evidence is admissible." *Hunter* v. *United States*, supra [272 F. 241].

There is sufficient evidence in the record to support a finding by the jury that defendant Louise Wilson was guilty of keeping the Golden Hotel as a house of ill-fame resorted to for the prostitution and lewdness after July 1, 1941. As to defendant, Tacconi: His written lease expired April 1, 1941. For five months thereafter he paid the rent, presumably as a tenant from month to month. Whether there was some arrangement between him and defendant, Wilson, relative to occupancy of the premises during such time is not shown. Wilson, under the evidence, was at least ostensibly in charge. Tacconi owned some furniture at the hotel. It was mortgaged to the owner of the building to secure payment of the rents under the Wilson lease. One witness, a police officer, in response to a question as to whether he had seen Tacconi at the premises subsequent to July 1, 1941, answered: "I have seen him there." How often, whether more than once, or under what circumstances does not appear. Though the evidence is sufficient to show that Tacconi was doubtless a pander prior to July 1, his operation of the house subsequent to that date is not shown beyond a reasonable doubt. His conviction hence cannot stand.

The assignments relative to misdirection of the jury, complain of two instructions of the court. The indictment charged the keeping of a house of ill-fame,

"contrary to the provisions of Sec. 103-51-21, U. C. A. 1943."

In instruction No. 3, the court quoted the statute verbatim, viz.,

"It shall be unlawful for any person: (1) To keep a house of ill fame resorted to for the purpose of prostitution or lewdness, or to willfully reside in such house, or to resort thereto for lewdness",

and stated to the jury that such statute was in force at the time alleged in the indictment. This was the total substance of the instruction. Appellants complain that under such instruction the jury might have found defendant, Wilson, guilty because she resided in a house of ill-fame or that either appellant might be convicted for resorting. If this were the only instruction given, the contention would have to be sustained. However, in instruction No. 1, the court instructed the jury that defendants were charged with keeping a house of ill-fame, in that they "operated and maintained" the premises, describing them, during the period mentioned in the indictment, "as a house of prostitution," that they "knowingly permitted prostitutes to live in said establishment," and knowingly permitted "said hotel to be resorted to for the purpose of prostitution." Then in instruction No. 4 the court specifically instructed that the burden was on the state to prove to the satisfaction of the jury beyond a reasonable doubt each of the material allegations contained in instruction No. 1, and if it failed to do so as to either defendant the verdict of the jury must be in favor of such defendant. While instruction No. 3 might better have been omitted altogether in view of the giving of instruction No. 1; in light of the other instructions discussed, the jury could not possibly be misled into believing that anything short of proof of keeping a house of ill-fame as defined in instruction No. 1 would justify a conviction.

The court instructed the jury that "there has been admitted proof which may tend to prove that the defendants committed offenses other than those charged in the indictment" and then went to tell the jury that the evidence was received and was to be considered by them "to show guilty knowledge of these defendants of the

offenses charged and not as proof of the acts charged in the indictment." Whether the court was referring to the evidence introduced as to the arrest and forfeiture of bail by defendant, Wilson, or to the conducting of a house of ill-fame at a time prior to the dates alleged in the information, is not clear. If the former, then it was error to refer to such evidence as tending to prove that the defendants committed other crimes. This is, of course, true as to Tacconi, concerning whom no such evidence was introduced. If it referred to the former, while ambiguous in the extreme in speaking generally of other crimes, nevertheless it confined consideration of such evidence to such a narrow sphere that it was not at all unfavorable to defendants. In view of the conclusion we have reached as to the insufficiency of the evidence as to defendant, Tacconi, we need not determine whether such instruction may have been prejudicial as to him; and in light of the evidence, we are unable to see how the instruction could have been prejudicial as to defendant, Wilson.

The judgment is affirmed as to defendant Wilson, and reversed as to defendant Tacconi.

LARSON, C. J., and WADE and WOLFE, JJ., concur.
PRATT, J., not participating.