Rivera, J.
(dissenting). Defendant Lerio Guerrero claims he was deprived of his constitutional right to indictment by a grand jury when the People failed to present that accusatory body with the evidence matching his DNA to the genetic numerical identifier in the caption of the original indictment. Since a grand jury has never accused defendant specifically of the crime for which he stands convicted, and the amended indictment that substituted his name for the DNA profile of the unknown perpetrator was not the product of a grand jury’s deliberative process, defendant’s conviction must be reversed and the indictment dismissed.[1]
The facts and relevant procedural history of this appeal are not in dispute. Shortly before the statute of limitations expired, the People obtained a grand jury indictment charging an unknown perpetrator for crimes arising from a sexual assault and robbery. The police investigation had proved unsuccessful in identifying a person responsible for the crimes charged, and, based on samples from the rape kit, the caption referred to the perpetrator as a “John Doe,” with a DNA profile consisting of a 14-row genetic numerical identifier.
Years later, after police obtained a sample of defendant’s DNA during the course of an unrelated investigation, the People moved to amend the indictment upon presentation of double hearsay evidence, asserting that defendant’s DNA matched the genetic numerical identifier. A judge granted the motion. Defendant unsuccessfully moved to dismiss the indictment based, in part, on the People’s failure to present the linking evidence to the grand jury. Thereafter, defendant pleaded guilty to the crimes charged in the amended indictment. On appeal to this Court he renews his claim that the indictment is defective and asserts that his guilty plea does not bar this Court’s review. Defendant is correct on both points.
The State Constitution expressly provides for indictment by a grand jury before an individual may be tried for an infamous *119 crime (NY Const, art I, § 6; see also People v Iannone, 45 NY2d 589, 593 n 3 [1978]). This requirement is “intended to prevent the people of this State from potentially oppressive excesses by the agents of the government in the exercise of the prosecuto-rial authority vested in the State” (Iannone, 45 NY2d at 594 [citation omitted]). “Thus, before an individual may be publicly accused of crime and put to the onerous task of defending himself from such accusations, the State must convince a Grand Jury composed of the accused’s peers that there exists sufficient evidence and legal reason to believe the accused guilty” {id.). As the constitutional “check” on the prosecutorial power of the State and in its accusatory role, the grand jury “remains the exclusive judge of the facts with respect to any matter before it” (People v Pelchat, 62 NY2d 97, 105 [1984]).[2]
A defendant who pleads guilty may assert challenges on appeal that “relate either to jurisdictional matters . . . or to rights of a constitutional dimension that go to the very heart of the process” (People v Hansen, 95 NY2d 227, 230 [2000] [emphasis added]). Here, defendant’s challenge is constitutional in nature because his claim is grounded in the “fundamental right” to have a grand jury of his peers determine whether evidence and legal reason support the charges against him (Iannone, 45 NY2d at 593). Specifically, he argues that the indictment is defective because the People did not present the linking DNA evidence to the grand jury for it to consider whether to charge him as the person matching the DNA profile.
Contrary to the majority’s view, this is not a nonjurisdic-tional challenge to the sufficiency of the indictment (majority op at 116-117). Defendant neither claims that the evidence is quantitatively deficient, nor asserts a technical error as to form, both of which are arguments foreclosed by his plea (see Hansen, 95 NY2d at 231 [explaining that “evidentiary or technical matters” do not survive a guilty plea and arguments about the sufficiency of the evidence presented to the grand jury are foreclosed]).
Rather, he claims that substitution of his name for the DNA numerical identifier requires the exercise of the grand jury’s accusatory power and cannot be accomplished on submission to the trial court by a motion to amend. The defect concerns who *120 may accuse defendant based on evidence of a match to the inculpatory DNA, and therefore goes to the essential role of the grand jury and the “integrity of the process” (id.).
This distinction is critical because while a challenge to the sufficiency of the indictment qua document is forfeited by a defendant’s plea, a challenge to the indictment as the embodiment of the grand jury deliberative process may be raised on appeal. In Iannone, this Court held that “the basic essential function of an indictment qua document is simply to notify the defendant of the crime of which he stands indicted” so that the defendant may prepare a defense (45 NY2d at 598). Defendant’s claim does not center on the notification purpose of the indictment, but on the essential accusatory role of the grand jury within the criminal justice system. That role requires that the grand jury indict him specifically, if persuaded by the People’s DNA linking evidence (People v Calbud, Inc., 49 NY2d 389, 394 [1980] [“The primary function of the Grand Jury in our system is to investigate crimes and determine whether sufficient evidence exists to accuse a citizen of a crime and subject him or her to criminal prosecution”]).
The People argue that defendant forfeited his claim because the grand jury did in fact decide to indict the person with the DNA numerical sequence identifier as set forth in the indictment caption. While the grand jury may have indicted an unknown person with a genetic descriptor, the indictment and amended indictment do not constitute a grand jury accusation of him specifically because the grand jury never considered whether the DNA evidence matched defendant.
Turning to the merits, this is not a typical change of name by which one moniker is replaced with another. First, the DNA profile consisting of 14 rows of numbers and letters is not commonly understood as a person’s “name.” Second, despite the People’s attempt to minimize the task-at-hand as simply ministerial in nature, more was required than the exchange of a known person’s name for an alphanumeric descriptor. As illustrated by the record and the People’s hearsay evidence, the amendment process was complex; it required untainted collection of defendant’s DNA and preservation of the chain of custody, as well as genetic testing and the scientific assessment and opinion-based comparison of DNA samples.
Also unpersuasive is the People’s argument that substitution of defendant’s name is a technical change within the meaning *121 of CPL 200.70 (1). This provision allows for amendment of the indictment
“[a]t any time before or during trial, . . . with notice to the defendant and opportunity to be heard, . . . with respect to defects, errors or variances from the proof relating to matters of form, time, place, names of persons and the like, when such an amendment does not change the theory or theories of the prosecution as reflected in the evidence before the grand jury which filed such indictment, or otherwise tend to prejudice the defendant on the merits.”
However, the statute does not apply to DNA indictments because substitution of a person’s name for a genetic numerical sequence is not error correction. Indeed, the People have never taken the position, nor could they, that the DNA sequence presented to the grand jury is defective or mistaken. They do not argue that there is a variance from proof relating to defendant’s name because, of course, there was no proof of his name in the indictment originally presented to the grand jury. This is understandable because in the DNA indictment context, name substitution is not mere error correction, intended to cure a misspelling or a misunderstanding about a person’s legal name.
Given the nature of changing a name in the DNA indictment context, the People’s interpretation of CPL 200.70 (1) is also not in accord with its legislative purpose to change the strict common-law rule that forbade even minor changes to an indictment (People v Perez, 83 NY2d 269, 273-276 [1994] [explaining that the legislature passed CPL 200.70 in response to this Court’s decision in People v Van Every (222 NY 74 [1917]), which dismissed an indictment for legal impossibility because it stated that the crime occurred on a future date]). Unlike an incorrect name or alias, which constitutes a defect or clerical error in an indictment, the substitution of a human being’s name for a genetic alphanumerical sequence requires establishing the scientifically acceptable link between the DNA obtained from the crime and a defendant’s DNA.
Furthermore, the People assert that our case law characterizes a name change on an indictment as a mere technicality, but a close reading of the cited authority reveals that the cited case was about the modern approach to the indictment process. Specifically, the People cite People v Bogdanoff to support their proposition that a name change is a technicality, but Bogdanoff, *122 decided in 1930, upheld the legality of simplified indictments and clarified that the legal formalism of common-law indictments was no longer relevant (254 NY 16, 32 [1930]; see also Iannone, 45 NY2d at 597 [interpreting Bogdanoff in this manner]). In Bogdanoff, the defendants attempted to challenge an indictment as being too ambiguous in its description of the crime, and the Court held that the bill of particulars could be used to interpret the indictment (id. at 25). The Court made reference to “fictitious or erroneous names” only as an example of the liberalization of the indictment process, and in this context recognized that “error in description or name may be corrected or disregarded” (id. at 29). The Court’s move away from the highly technical formalities of the past does not permit removal from the grand jury of its essential function as an accusatory body.[3]
Close examination of this case exposes that the People’s argument has no basis in our jurisprudence. Rather, Bogdanoff merely upheld the liberalization and simplification of indictments by use of a bill of particulars showing “that an accusation of crime . . . was intended and calculated to describe the crime for which the accused is held” (254 NY at 30-31). This is easily distinguishable from what the People seek to do in this appeal. Additionally, Bogdanoff was decided before the discovery of DNA and the application of scientific advancements that allow the People to identify a perpetrator based on a genetically and biologically-based numerical sequence. This case is not appropriate guidance or binding precedent on the issue presented on this appeal.
*123 The fact is that the perpetrator was not known and the People never presented the grand jury with any name—fictitious or otherwise—but with a scientific method for identifying the alleged perpetrator. There is no doubt about the crime charged or that the DNA presented to the grand jury is alleged to belong to the perpetrator. No extraneous evidence is necessary to clarify the meaning of the grand jury’s words. Instead, the grand jury simply never accused defendant as the person linked to the DNA of the perpetrator.
There are also policy reasons to reject the People’s argument that substitution of a name for a DNA profile does not require grand jury involvement. The People secured the DNA indictment fully aware that in order to prosecute a suspect identified in the future, a name would have to be substituted for the DNA profile, and this would require presenting DNA evidence establishing a link between a named human being and the crime. If, prior to 2005, law enforcement had matched defendant’s DNA to the DNA from the rape kit, the People would have presented the evidence at that time to the grand jury. Allowing the People to amend the indictment once the necessary DNA evidence was discovered years later, without submission to the grand jury, perverts the intended purpose of CPL 200.70 to address insignificant changes to the indictment and thereby avoid dismissals due to technical defects (see Perez, 83 NY2d at 276). It also undermines the purpose of the grand jury to “prevent the people . . . from potentially oppressive excesses ... in the exercise of the prosecutorial authority vested in the State” (Iannone, 45 NY2d at 594).
To the extent the People suggest that defendant may challenge the linking evidence at trial, this ignores the reality that cases are overwhelmingly resolved by pleas, which is further reason to reaffirm a defendant’s right to the grand jury’s consideration of the evidence linking him to the crime. For example, “[n]inety-seven percent of federal convictions and ninety-four percent of state convictions are the result of guilty pleas” (Missouri v Frye, 566 US —, —, 132 S Ct 1399, 1407 [2012], citing Department of Justice, Bureau of Justice Statistics, Sourcebook of Criminal Justice Statistics Online, table 5.22.2009). The numbers speak for themselves and make plain that the vast majority of defendants will never go to trial, and therefore lose the chance to challenge the DNA evidence before a jury of their peers. Yet, DNA evidence is an extremely potent tool for the People (People v Wright, 25 NY3d *124 769, 783 [2015]). “The persuasiveness of DNA evidence is so great that . . . ‘[w]hen DNA evidence is introduced against an accused at trial, the prosecutor’s case can take on an aura of invincibility’ ” {id. [citation omitted]). With such high stakes, it is even more important to preserve the grand jury’s role as a check against prosecutorial abuse.
The practical impact of requiring the People to present the DNA linkage evidence to a grand jury in cases involving DNA indictments is limited, and the law already provides a mechanism to address these situations. The People may obtain a superceding indictment that relates back to the earlier indictment (People v Lomax, 50 NY2d 351, 356 [1980]; People v Sinistaj, 67 NY2d 236, 237 [1986]). Additionally, if dismissal of the indictment is required, the People may re-present to another grand jury (Lomax, 50 NY2d at 356). Though a holding in favor of a defendant will sometimes require additional action by the People, this should not impact our analysis. Arguments about “the waste of prosecutorial resources that will result from requiring a superseding indictment” have merit but are “policy considerations [that] must be addressed by the Legislature, however, not the courts” (Perez, 83 NY2d at 276).
For these reasons, the People failed to present the grand jury with the only evidence linking defendant to the alleged perpetrator’s DNA, depriving him of his fundamental right to grand jury indictment. His conviction should be reversed and the indictment dismissed.
Chief Judge DiFiore and Judges Abdus-Salaam, Stein, Fahey and Garcia concur; Judge Rivera dissents in an opinion.
Order affirmed.

. Given my conclusion that the conviction must be overturned and the indictment dismissed as constitutionally defective, I take no position on the majority’s resolution of defendant’s remaining claims.

. The opportunity for a defendant to waive indictment by grand jury upon consent of the district attorney is not at issue on this appeal (see NY Const, art I, § 6).

. The same is true of the cases cited in the Bogdanoff decision. First, in People v Seidenshner (210 NY 341 [1914]), the codefendants argued that their criminal aliases should not be included in the indictment because they would prejudice the jury, but the Court held that both their true names and criminal aliases could properly be included in the indictment. Second, in People v Johnson (104 NY 213 [1887]), the name of the victim was missing from the indictment, and the defendant argued that this was an essential element of the crime such that the indictment was insufficient to charge him with a crime. However, the Court held that the victim’s name need not be included in the indictment (id. at 217). Lastly, in United States ex rel. Mouquin v Hecht (22 F2d 264, 265 [2d Cir 1927]), the Second Circuit held that an indictment charging “Louis A. Mouquin” need not be corrected, even though the defendant’s true name was “Louis C. Mouquin.” Though this case is nearest to the rule urged by the People here, it still misses the mark because the case refers to a minor change to the name of a known defendant. Taken together, these cases illustrate that the authority upon which the People’s argument is built does not support its conclusion and is easily distinguishable from the facts presented here.