STATE OF IOWA, Appellee, v. LYNUS PINKERTON, Appellee; MANLEY THOMPSON, Appellant.

**HOMICIDE: Murder—Plea of Guilty—Findings by Court—Surplusage
1  —Effect.** A judgment entry of murder in the first degree, on supported findings by the court, after a plea of guilty to an information charging, among other necessary averments, a "willful, deliberate, and premeditated" killing, without any averment that the killing was perpetrated in the commission of a "burglary," will not be disturbed because the findings unnecessarily recite that the parties were, at the time of the killing, *burglarizing* a mere *office* building,—an offense technically unknown to our law.

**HOMICIDE: Murder—Degrees—Commission of "Burglary."** The stat-
2  ute which declares murder to be in the first degree when committed in the perpetration or attempt to perpetrate a "burglary" (Sec. 12911, Code of 1924), refers solely to the burglary of a *dwelling house* (Sec. 12994, Code of 1924).

**HOMICIDE: Murder—Specific Intent to Kill—Use of Deadly Weapon.**
3  A specific intent to kill may justifiably be drawn from the deliberate use of a deadly weapon in a deadly manner. (See Book of Anno., Vol. 1, Sec. 12911, Anno. 28.)

**CRIMINAL LAW: Accessories—How Tried.** Principle reaffirmed that
4  an accessory before the fact is triable as a principal.

Headnote 1: 9 C. J. p. 1022; 16 C. J. p. 1271 (Anno.) Headnote 2: 29 C. J. p. 1106. Headnote 3: 30 C. J. p. 140. Headnote 4: 16 C. J. p. 121; 29 C. J. p. 1063.

*Appeal from Tama District Court.*—JAMES W. WILLETT, Judge.

APRIL 6, 1926.

DEFENDANT Thompson was indicted, and pleaded guilty to the charge of murder in the first degree. The court, after hear-

ing testimony, sentenced him to the penitentiary for life. Defendant appeals.—*Affirmed.*

*C. B. Stiger,* for appellant.

*Ben Gibson,* Attorney-general, *Neill Garrett,* Assistant Attorney-general, and *James H. Willett,* County Attorney, for appellee.

ALBERT, J.—On the 17th of September, 1925, the county attorney of Tama County filed information against the appellant and another, charging first-degree murder by willful, deliberate, and premeditated killing. The appellant filed a written plea of guilty to the information as charged, and the court thereupon, under Section 12913 of the Code of 1924, examined witnesses, to determine the degree of the crime, and found that appellant was guilty of murder in the first degree, as charged in the information.

1. HOMICIDE: murder: plea of guilty: findings by court: surplusage: effect.

The charge of murder grew out of the following facts, all of which are admitted in the written confession of appellant, and properly corroborated, as required by law.

Appellant and his codefendant, Lynus Pinkerton, resided in the town of Traer, Iowa. About the 19th of July, 1925, these two young men left Traer and went to South Dakota, where they worked in the harvest field. They left there about August 8, 1925. While in South Dakota, on two or three occasions Pinkerton spoke about going back to Traer and robbing his father's safe. Thompson says he tried to talk him out of it, but Pinkerton said his father had money in the safe, and that he had robbed it before. He also spoke of a diamond ring in the safe, which he wanted to get for his girl. After leaving South Dakota, they went to Blue Earth, Minnesota, and from there to Des Moines, where they stayed at a hotel for one night, and slept in a box car the next. While in Des Moines, Pinkerton bought a 32-caliber automatic revolver at a pawnshop, and Thompson bought a 38-caliber Texas Ranger revolver. On the morning of the 12th of August, they caught a freight train to Marshalltown, and another from there to Lincoln and Rein-

beck, and from there went to Traer. They reached Traer after 10 P. M., August 12th. They kept out of sight; and later, Pinkerton got a piece of iron, and went to the office of Dr. Pinkerton, who was his stepfather, with Thompson. Pinkerton broke the catch on the window in the rear of the office, raised the window, and both men entered. The room which they entered housed the safe. Pinkerton knew the combination to the safe, and opened its outer door. The inner door unlocked with a key, which they did not have, and Pinkerton attempted to open it with the piece of iron.

The town marshal, one Frank Mommer, used the front room of the office as a resting place during his nightly vigils. About this time, the marshal came into the front office, and presently fell asleep on the couch. Pinkerton then said he was going out in the front room where Mommer was, and was going to lay him out with his gun; that he was going to hit him over the head with it. He opened the door between the two rooms, and went in. Thompson followed him. Pinkerton struck Mommer over the head with his revolver. Mommer started to rise, when Pinkerton shot him with his revolver, and ran back into the other room and closed the door, catching Thompson's hand in the door. Thompson saw Mommer's attempt to rise, and thought he had a revolver in his hand; so Thompson shot him with his 38 Texas Ranger, ran out into the back room, and followed Pinkerton out of the window. Mommer died within a few hours thereafter. This is a sufficient statement of facts for consideration of the questions raised in this appeal.

It is first argued that, under the record, the appellant could only be found guilty of murder in the second degree. This conclusion is reached by deductions made from the various Iowa statutes, to which reference will later be made. It is urged that, as this was an office building, and not a dwelling house, appellant, in breaking and entering the same, did not perpetrate a burglary, within the contemplation of Section 12911 of the Code of 1924, which reads:

2. HOMICIDE: murder: degrees: commission of "burglary."

"All murder which is perpetrated by means of poison, or lying in wait, or any other kind of willful, deliberate, and premeditated killing, or which is committed in the perpetration or

attempt to perpetrate any arson, rape, robbery, mayhem, or burglary, is murder in the first degree, and shall be punished with death, or imprisonment for life at hard labor in the penitentiary, as determined by the jury, or by the court if the defendant pleads guilty.''

It is argued, therefore, that appellant should have been found guilty of murder in the second degree, under Section 12912, which reads as follows:

''Whoever commits murder otherwise than as set forth in the preceding section is guilty of murder in the second degree, and shall be punished by imprisonment in the penitentiary for life, or for a term of not less than ten years.''

To this proposition we will give our attention.

Section 12994 defines burglary as follows:

''If any person break and enter any dwelling house in the nighttime, with intent to commit any public offense; or, after having entered with such intent, break any such dwelling house in the nighttime, he shall be guilty of burglary, and shall be punished according to the aggravation of the offense, as is provided in the next two sections.''

Section 13001 reads:

''If any person, with intent to commit any public offense, in the daytime break and enter, or in the nighttime enter without breaking, any dwelling house; or at any time break and enter any office, shop, store, warehouse, railroad car, boat, or vessel, or any building in which any goods, merchandise, or valuable things are kept for use, sale, or deposit, he shall be imprisoned in the penitentiary not more than ten years, or be fined not exceeding one hundred dollars and imprisoned in the county jail not more than one year.''

Section 13004 provides punishment for breaking and entering a freight or express car which is sealed or locked. Section 12997 defines burglary with explosives, and Section 12998 defines burglary with electricity or gas. It is therefore urged that there is a line of demarcation, made definite and certain by our statute, between burglary and other acts of breaking and entering. As defined in Section 12994, the term ''burglary,'' under the Iowa statute, in its true sense applies only to breaking and

entering a dwelling house, as distinguished from any other building. With this contention we are disposed to agree.

The aforesaid Section 12911, defining first-degree murder, consists of a compound sentence. Under this section, murder in the first degree may be committed (1) by means of poison; (2) by lying in wait; (3) by any other kind of willful, deliberate, and premeditated killing; (4) in the perpetration of or attempt to perpetrate any arson, rape, robbery, mayhem, or burglary. An indictment may be drawn charging the murderer with any one of these four methods, and, containing the necessary allegations, the indictment will be good, under this section of the statute. When the pleader has drawn the indictment covering any one of these four methods, it necessarily follows that he must prove the allegations of his indictment.

Turning now to the instant case, we find that the charge here is murder in the first degree, committed in the manner set out in the third of the above named methods. It does not charge poisoning or lying in wait; nor does it charge that the killing was done while perpetrating a burglary. The appellant Thompson having entered his plea of guilty to the indictment for murder herein, the question is, What was the next step in the proceedings? Section 12913, Code of 1924, reads as follows:

"Upon the trial of an indictment for murder, the jury, if it finds the defendant guilty, must inquire, and by its verdict ascertain and determine the degree; but if the defendant is convicted upon a plea of guilty, the court must, by the examination of witnesses, determine the degree, and in either case must enter judgment and pass sentence accordingly."

This statute is a fair and concise statement, without elaboration. In other words, where an indictment is returned for murder (in either degree), and a plea of guilty is entered thereto, a defendant is not allowed to determine for himself the degree of the crime; but, under these circumstances, this duty rests wholly with the court. That it is the duty of the court to determine the degree of the crime is settled in the early history of this court. *M'Cauley v. United States,* 1 Morris 641. A very interesting note on this proposition may be found in 6 A. L. R. 697.

At this stage in the proceedings, the court was called upon,

in the instant case, to obey the provisions of the aforesaid section, and in pursuance thereof, witnesses were examined in open court, and other evidence was introduced; whereupon the court made special findings in the case, summarizing the evidence and stating its conclusions. It prepared, signed, and filed à judgment entry, which was recorded, as follows:

"In conclusion, the court finds, from all the evidence, confessions, admissions, and proven facts, that the defendant Manley Thompson is guilty, beyond a reasonable doubt, of murder in the first degree. Wherefore, it is now determined and adjudged by the court that the action of the court and findings with judgment heretofore made are confirmed; that the defendant Manley Thompson is now finally adjudged guilty of the crime of murder charged in the county attorney's information herein; that it is judicially determined by this court that the defendant Manley Thompson is adjudged guilty of murder in the first degree. It is determined and adjudged by the court that the defendant Manley Thompson, on the 13th day of August, 1925, at Traer, Tama County, Iowa, did kill and murder one Frank Mommer, in manner and form as charged in the indictment herein, ànd that said crime is murder in the first degree."

Later, appellant was sentenced, by proper order, to life imprisonment.

It is urged by counsel for the appellant that, under this finding and judgment, the appellant was convicted of murder in the first degree because the killing occurred while the appellant and Pinkerton were engaged in burglarizing an office building. With this contention we cannot agree. While, in its findings, the court refers to the fact that they were engaged in burglarizing the building, and again, that they were engaged in a common cause, yet, when it sums up its conclusions and makes its judgment entry, there is contained therein sufficient finding to answer every call of the indictment in the case. It says, in so many words, in the judgment entry, that the "defendant did kill and murder one Frank Mommer in the manner and form as charged in the indictment herein," and that said crime is murder in the first degree. A review of the findings, which are confirmed in the judgment entry, shows that every element necessary to an indictment of this character is found by

the court to exist; and the court, in specifying the elements, finds that each one is proven in the case. The fact that the court, in its findings, says that they were engaged in the common enterprise of burglarizing the office does not militate against or disturb the other findings. Findings of this character, that they were engaged in a common enterprise, or were jointly breaking and entering the office building, are surplus findings, and should not be permitted to disturb the other findings in the case. Had the indictment been drawn under the fourth subdivision of the aforesaid Section 12911, we would then be squarely met with the original proposition urged herein by the appellant; but, as long as the indictment is not under that part of the statute, we do not care to further express ourselves in relation thereto.

It is next urged that:

"Even though the evidence in this case proves that homicide was committed with malice aforethought, was willful, deliberate, and premeditated, such proof does not permit the inference that the homicide was done with specific intent to kill. Specific intent must be proven beyond a reasonable doubt."

Our attention is called to *State v. O'Donnell*, 176 Iowa 337. With the declaration of the law as stated in that case we have no contention. The findings of the court in this case, however, specially find that the killing was done by the defendant "with specific intent to kill." The evidence warrants this finding, because it is a settled rule of law that the unlawful, intentional use of a deadly weapon in a deadly manner, resulting in death, raises the presumption of intent to kill; as a man is presumed to intend the necessary consequences of his own act. In *State v. Sullivan*, 51 Iowa 142, the instruction read:

3. HOMICIDE: murder: specific intent to kill: use of deadly weapon.

"And when a man assaults another with, or uses upon another, a deadly weapon in such a manner that the natural, ordinary, and probable result of the use of such deadly weapon in such manner would be to take life, the law presumes that such person so assaulting intended to take life."

Throwing light on the same subject are *State v. Hockett*, 70 Iowa 442; *State v. Tippet*, 94 Iowa 646; *State v. Phillips*, 118 Iowa 660.

Under another view of the evidence in this case, the guilt

of the appellant seems undebatable. When Pinkerton announced that he was going into the other room and "lay Mommer out," the appellant Thompson took his revolver and accompanied Pinkerton into the room where Pinkerton shot Mommer. Under the well known rule of liability as accessory, even though Thompson might not have fired the fatal shot, yet, under the evidence, he would be an accessory to the crime there perpetrated by Pinkerton, and, under the Iowa statute, would be liable as principal. After a careful study of the record in this case, regrettable as it may be, we can reach no other conclusion than that reached by the presiding judge. We conclude that, under the law, the appellant Thompson, though only 18 years of age, was properly found guilty of murder in the first degree, and sentenced accordingly. The evidence shows no palliation or mitigation in any form; and, while the penalty is severe, it is that marked out by the legislature in its wisdom, and the necessities of the present situation require that we abide by and respect it.—*Affirmed.*

4. CRIMINAL LAW: accessories: how tried.

DE GRAFF, C. J., and EVANS and MORLING, JJ., concur.