STATE OF IOWA, Appellee, v. WILLIAM ENGLER et al., Appellants.

No. 41541.

NOVEMBER 14, 1933.

Charles W. Bowers and Louis Ansher, and John W. Joynt, for appellants.

Edward L. O'Connor, Attorney-general, and Walter F. Maley, Assistant Attorney-general, for appellee.

KINTZINGER, J.—The indictment charged the defendants with having in their possession burglar tools with intent to commit the crime of burglary. The defendants demurred to the indictment on the grounds:

1. That it fails to charge: (a) the crime defined by section 13000; (b) the manner in which the crime was committed; (c) the venue; and (d) that the acts were done willfully and feloniously.

2. That the Short Form Indictment Act (chapter 638 of the Code) is contrary to article I, sections 9 and 10, and article III, section 29, of the constitution. The demurrer was overruled, and the questions were again raised in a motion for a directed verdict. Both overruled.

The defendants were arrested in the Capitol City State Bank building at Des Moines, Iowa, on December 12, 1931. About 8:30 that night the bank's watchman heard a pounding noise in the west wall of the bank. He called in police officers and one of the bank's officials. The pounding noise ceased about the time the police officers arrived. They listened at the wall and heard a scratching and scraping sound. The sound came from the wall back of the vault. The roof of the building adjoining the bank on the south is about even with the third story of the bank building. The officers looked south out of a second floor window and saw three men on the adjoining roof above them. These men climbed over the wall and dropped about thirteen or fourteen feet onto the roof of a court. They then ran east and broke through a window in a law office on the same floor with the bank. As they ran one of the officers fired a shot. The officers followed them into the law office, and there found the defendants Lugar, Engler, and Wilhite; and a short time afterwards found the defendant Urban hiding under a desk in the same office. They also found a revolver near the door. When arrested, the defendant Wilhite gave his name as Miller, Engler gave his as Crete, Lugar gave his as Walsh, and Urban gave his as Williams. They gave their true names to the police later.

On the same night, Virginia Patterson, her mother, and Elsie Squires, who were on the sixth floor of the bank building, saw a man coming out of a window on the third floor of the building immediately west of the bank, followed by three others. Two of these men removed coveralls. Three of the men dropped from the edge of the roof to the floor below. They heard a shot and then the noise of breaking glass. They heard another shot, and then the fourth man dropped and ran. The police officers found an open window on the third floor on the south side of the bank building. They also found a pair of coveralls on the roof of the building south of the bank, and another pair on the third floor inside of the building. On the second floor they found a place marked on the wall back of the bank vault about a yard square, with a six-inch hole in the center, and some bricks and mortar lying on the floor. Near

the hole they found an assortment of what the officers called burglar tools, consisting of a wrecking bar, a keyhole saw, a lead-faced hammer, a short-handled sledge, a hatchet, a cutting torch, a chisel, a hose for gas, a revolver, a gauge for measuring gas in the cutting torch, a flash-light, a box of hairpins, a screwdriver, a .45 automatic pistol, goggles, and a bottle of glycerine. In a small room on the third floor they found an acetylene tank, an oxygen tank, a hose connection, a cutting torch, blankets, and a box of punches.

After their arrest the defendant Urban, in a conversation with Lieutenant Pastel, said: "We were in there like a bunch of rats. If we had had a lookout we would have beat you. We were in there 45 minutes. The racket is getting too bad, you can't beat it. This thing of going out in the day time and getting it, you have to shoot your way out of it. I won't play that way. I don't do that kind of business." In another conversation, Urban said: "I was going to work for those fellows; they were going to put in a still in those vacant rooms in back of the bank. I was getting $20.00 a day." Pederson asked this witness what they were going to do with the hole, and he said "We were going to put the boilers in there." He said the boilers were coming the next day. In a conversation with Lieutenant Pastel, the defendant Engler asked "what they got in this State for burglary". In another conversation with the defendant Lugar, the chief said: "I told Lugar 'You fellows must have been crazy to go in that bank—attempt to go in that bank, where all them wires were.' He said 'We were not going in where the wires were, we were going in the back end,' and the chief said 'What do you mean, the back end of the vault?' and Lugar said 'Yes, there is no wires there.'"

I. It is claimed that the court erred in failing to sustain defendants' demurrer to the indictment, and their motion for a directed verdict because the indictment was not sufficiently specific. The indictment in this case charges that the defendants "had in their possession burglar tools with intent to commit the crime of burglary." The demurrer and motion are based upon the grounds that the indictment fails to conform to the requirements of the Code in the several particulars as hereinabove set out.

The indictment was drawn under the short form indictment statute, section 13732-c2, which provides as follows:

"The indictment may charge, and is valid and sufficient if it charges, the offense for which the accused is being prosecuted in

one or more of the following ways: 1. By using the name given to the offense by statute. 2. By stating so much of the definition of the offense, either in terms of the common law *or of the statute defining the offense,* or in terms of substantially the same meaning, as is sufficient to give the court and the accused notice of what offense is intended to be charged. The indictment may refer to a section or subsection of any statute creating the crime charged therein, and in determining the validity or sufficiency of such indictment regard shall be had to such reference." (Italics ours.)

The crime charged is that the defendants were found with "the possession of burglar tools with intent to commit the crime of burglary", contrary to section 13000. Section 13000 provides:

"If any person be found having in his possession at any time any burglar's tools or implements, with intent to commit the crime of burglary, he shall be imprisoned in the penitentiary," etc.

Section 13732-c3 provides:

"No indictment which charges the offense in accordance with the provisions of section 13732-c2 shall be held to be insufficient on the ground that it fails to inform the defendant *of the particulars of the offense.*" (Italics ours.)

Section 13732-c4 provides that:

"When an indictment charges an offense in accordance with the provisions of section 13732-c2, but such indictment together with the minutes of the evidence filed therewith fails to inform the defendant of the particulars of the offense sufficiently to enable him to prepare his defense, or to give him such information as he is entitled to under the constitution of this state, the court may, of its own motion, and shall, at the request of the defendant, order the county attorney to furnish a bill of particulars containing such information as may be necessary for these purposes."

Section 13732-c8, par. 2, provides:

"The allegation in an indictment that the defendant committed the offense shall in all cases be considered an allegation that the offense was committed within the territorial jurisdiction of the court."

If a sufficient description of the burglar tools was not contained

in the indictment, the defendant, under the foregoing statutes, could compel the state to file a bill of particulars therefor. As this was not done, we find no merit in appellant's contention on this point. Supporting our view, see State v. Harness, 214 Iowa 160, 241 N. W. 645; State v. Long, 215 Iowa 494, 245 N. W. 726.

■ II-a. It is also claimed that the short form indictment statute is invalid as contrary to article I, section 10, of the Constitution of this state. Section 10, article I, provides that:

"In all criminal prosecutions * * * the accused shall have a right * * * *to be informed of the accusation against him,* to have a copy of the same when demanded; to be confronted with the witnesses against him," etc. (Italics ours.)

Appellants contend that they were not so *"informed of the accusation against them".* The only method of informing a defendant of the accusation against him is by the indictment. Section 11, of article I, provides that "no person shall be held to answer for any higher criminal offense, unless on presentment or indictment by a grand jury."

Under the form of indictment provided for in our statutes, prior to the adoption of the short form indictment law, now contained in chapter 638 of the Code of 1931, it was held to be the rule by a long line of authorities, in this and other states, that an indictment charging defendant with the commission of a felony required great particularity both in the statement of the crime charged, and the facts constituting the same. The old statute, like the new, had for its authority the Constitution of the state. The constitutional provision itself is simple, and requires only *"that the defendant be informed of the accusation against him and have a copy of the same when demanded."* It also provides that "no person shall be held to answer for a felony unless on presentment or indictment by a grand jury."

There was an indictment returned in this case charging the defendants with having burglar tools in their possession with intent to commit the crime of burglary. The crime is charged in the very words of the statute. The statutory definition of this crime is in itself so simple that a statement of the crime charged is sufficient to inform the defendants of the accusation against them. They were informed of the offense charged by the indictment. There is no restriction upon the legislature as to the method in which indict-

ments shall be presented, nor is there any prescribed form,. in the Constitution, required to be followed in giving the defendant the information required.

Provisions similar to that contained in our Constitution are also contained in the Federal Constitution and the Constitutions of practically every state in the Union.

The reason for the constitutional protection afforded is that no person shall be held to answer for a felony, except upon indictment or presentment of a grand jury. Before a citizen can be held for trial, there must be a sufficient investigation by the grand jury to justify and require the charge to be made in an indictment.

The rule requiring detailed specifications and particulars in the indictment is of judicial origin, based upon the common law. This rule is of long standing and was adopted in practically all the states, including the United States. "For generations attempts have been made, with varying degree of success, to simplify forms of indictment. Such attempts may not be thwarted by insistence upon the preservation of outworn legalistic formulas." People v. Bogdanoff, 254 N. Y. 16, 171 N. E. 890, 891, 69 A. L. R. 1378.

"An indictment, then, within the meaning of the constitution, is nothing more than what it is defined to be by Blackstone (4 Com. 302),—'a written accusation, of one or more persons, of a crime or misdemeanor, preferred to, and presented by, a grand jury, upon oath.'" Wolf v. State, 19 Ohio St. 248.

In People v. Bogdanoff, supra, the court says:

"We may not hold that the framers of the Constitution intended that all the formalities of the old common-law indictments must remain forever inviolate. They intended, undoubtedly, that a written accusation of a crime must be presented by the grand jury before an accused may be held for trial upon a charge of felony. From the days of Magna Charta, the law of the land accorded an accused such protection against unfounded charges. The Legislature cannot dispense with a 'written accusation' by the grand jury, *but it can prescribe new forms of indictments, and dispense with some of its technical formalities.*" (Italics ours.)

See, also, Lougee v. State, 11 Ohio 68; State v. Schnelle, 24 W. Va. 767.

The legislature of our state has, by the short form of indictment adopted in chapter 638 of the Code, abolished all of the old common-law rules with reference to the specifications required in charging offenses under the old rule. Under this new form the old rules adopted by judicial construction requiring the particularities heretofore demanded have been abolished by legislative enactment.

As said by the commissioners proposing the new system in New York, we can also say that the courts are "not ignorant of the fact that their proposed reform will strike at the root of a system artificial and absurd in itself, and which is only saved from the contempt it merits, by the frequent use of the names of venerable legal authorities, under whose sanction it has grown and ripened into maturity * * * Nor will they allow themselves to believe that absurdities and fictions, so glaring and gross in themselves, as to provoke the laughter and contempt of the intelligent, will be permitted to continue longer than until a safe substitute for them can be found."

We do not mean to say that the legislature can provide such an abbreviated form of indictment as would omit the character of a specific crime. All crimes in this state are made so by statute. The legislature has the power to determine what constitutes a crime, and, when it has done so, it may also provide for giving the information of the crime necessary to be included in the indictment, for the information of the one accused. In People v. Bogdanoff, supra, the New York Court of Appeals said:

"In determining the validity of a law changing the form of the indictment, the courts base decision upon their conclusion whether full protection is afforded to the traditional, fundamental rights of the accused. The problem of the sufficiency of an indictment assumes a new aspect when the Legislature provides that omissions from an indictment may be supplied by a bill of particulars which becomes a part of the record of the accusation.

"In the new chapter of the Code of Criminal Procedure which authorized simplified indictments, the Legislature has provided a new method of protecting the rights of an accused. No longer may the court grant or withhold a bill of particulars in its discretion. Now the Legislature has commanded that 'upon the arraignment of the defendant, or at any later stage of the proceedings, the court shall, at the request of the defendant, direct the district attorney to file a bill of particulars of the crime charged.' "

Similar statutes have now been enacted in many states and have been held valid under constitutional provisions similar to ours. Commonwealth v. Howard, 205 Mass. 128, 91 N. E. 397; Commonwealth v. Peakes, 231 Mass. 449, 121 N. E. 420; People v. Farson, 244 N. Y. 413, 155 N. E. 724; Noles v. State, 24 Ala. 672; Hirschfelder v. State, 19 Ala. 534; Keiline v. State, 59 N. J. Law 468, 36 A. 1033; Amer. Law Inst., Code of Criminal Procedure, Official Draft, 1930, sections 154 and 155, pages 70 and 71, and the commentary thereon on pages 538 to 552, inclusive.

The Iowa short form indictment statute provides for charging of the offense committed in the words of the statute. Section 13732-c2.

Section 13000 of our statute provides that:

"If any person be found having in his possession at any time any burglar's tools or implements, with intent to commit the crime of burglary, he shall be imprisoned," etc.

The commission of this crime therefore consists in "having possession * * * of any burglar tools or implements, with intent to commit the crime of burglary." The indictment in this case charges the defendants with the crime of "having in their possession burglar tools with intent to commit the crime of burglary." These words are identical with the definition of this crime as contained in section 13000 of the Code. In addition to the foregoing allegation, the indictment also charges the defendants with the "possession of burglar tools," as defined in section 13000 of the Code.

Our statute also provides (section 13732-c7) that:

"1. An indictment need contain no allegation of the time of the commission of the offense except in those cases in which time is a material ingredient of the offense. 2. The allegation * * * that the defendant committed the offense shall in all cases be considered an allegation that the offense was committed after it became an offense and before the finding of the indictment and within the period of limitations prescribed by law for the prosecution of the offense."

Section 13732-c3 provides that:

"No indictment which charges the offense in accordance with the provisions of section 13732-c2 shall be held to be insufficient on the ground that it fails to inform the defendant of the particulars of the offense."

And section 13732-c4 provides for the compulsory furnishing of a bill of particulars to the defendants when required by motion on his part. Under the provisions of the short form indictment law, all of the rights of the defendant guaranteed under our Constitution are fully protected and in our opinion the law is constitutional and valid.

 II-b. It is also contended that the short form indictment law as contained in chapter 266 of the 43d General Assembly is unconstitutional as contrary to section 29 of article III, of the Constitution, which provides:

"Every act shall embrace but one subject, and matters properly connected therewith; which subject shall be expressed in the title."

Chapter 266 relates to the form, contents, and sufficiency of indictments, and provides for bills of particulars. We have examined the short form indictment chapter and find that it relates to and embraces only the subject of indictments, and matters properly connected therewith. For this reason the statute is not in violation of this provision of the Constitution.

 ▌ III. Defendants complain of the admission in evidence of certain tools and implements as burglar tools because they were not set out in the indictment. What is hereinbefore said with reference to the allegations of the indictment also applies here. Under the short form of indictment it is sufficient to allege the commission of the offense, in the words of the statute. The statute also provides that the state may be required to make the indictment more specific by furnishing a bill of particulars. No motion therefor was filed. It was therefore competent to admit the burglar tools under the general allegation charged in the indictment.

It was formerly the rule that it was necessary to describe the burglar tools in the indictment, and failure to do so would bar their admission in evidence. State v. McHenry, 207 Iowa 760, 223 N. W. 535; State v. Erdlen, 127 Iowa 620, 103 N. W. 984. Those cases were decided before the adoption of the short form indictment providing for a bill of particulars, and do not apply under the new statute. There was no error in admitting the burglar tools complained of.

 IV. It is also contended that the court erred in defining the crime of burglary. In instruction No. 7 the court said: "Bur-

glary as applied to the evidence in this case, is the breaking and entering at any time of any building in which any goods, merchandise or valuable things are kept for sale or deposit." Under our earlier decisions a definition of this kind was held erroneous. State v. Pinkerton, 201 Iowa 940, 208 N. W. 351. When the Pinkerton case was decided, burglary was not embraced in section 13003 of the Code. That section provides:

"If any person, with intent to commit any public offense, shall attempt to break and enter any dwelling house, at any time, * * * or at any time to break and enter any office * * * *or any building in which any goods, merchandise, or valuable things are kept for use, sale, or deposit,* he shall be imprisoned in the penitentiary," etc. (Italics ours.)

The cases relied on as holding that "the term burglary under the Iowa statute in its true sense applies only to breaking and entering a dwelling house" were decided upon facts occurring prior to the adoption of section 13738-b1, which changed the former rule. This statute provides as follows: "1. * * * The term 'burglary' shall embrace any violation of sections 12994 to 13004, inclusive." The legislature has by section 13738-b1 included within the term "burglary" the breaking or entering *any building in which any goods, merchandise, or valuable things are kept for use, sale, or deposit.* The rule announced in State v. Pinkerton, 201 Iowa 940, 208 N. W. 351, has therefore been superseded by the legislative enactment contained in section 13738-b1. While the instruction given does not embrace all acts constituting "burglary" it does embrace the acts referred to in the new statute, and was therefore not prejudicial.

██ V. It is also contended that the court erred in permitting police officers to testify that the tools found by them in the building were "burglar tools". Evidence of a similar character was held competent in the case of State v. Furlong, 216 Iowa 428, 249 N. W. 132, and we find no error therein.

██ VI. It is contended the court erred in giving instruction No. 5 because it did not limit the finding of the jury to evidence introduced during the trial. Instruction No. 5 is as follows:

"Before the defendants, or any of them, can be rightfully convicted of the crime charged in the indictment the State must

establish beyond a reasonable doubt each of the following propositions: (1) That the defendants, or one or more of them, did * * * on or about December 12, 1931, wilfully, unlawfully and feloniously have in their *or* his possession burglar tools or implements. (2) That *said* possession of said burglar tools or implements was with the intent on the part of the defendants, *or one* or more of them so having the same in *their* or *his* possession, to commit the crime of burglary; and that if the State has failed to prove beyond a reasonable doubt either of the foregoing propositions *with respect to any one* or more *of the defendants, then as to such defendant or defendants as to which the State has so failed, you should return a verdict of not guilty.*" (Italics ours.)

This instruction clearly advises the jury that, before they could find any one of the defendants guilty, they were required to find that (1) he *or* they must have had possession of burglar tools, and (2) that such possession must have been with the intent to commit the crime of burglary.

The instruction does not assume that the tools were burglar tools, but specifically requires the jury to find that any defendant *or* defendants found guilty, had in their possession burglar tools or implements, and that such possession was with the intent to commit the crime of burglary. We find no prejudicial error in the instruction.

 VII. Appellants complain that instruction No. 8 authorizes the jury to find all of the defendants guilty, if any one or more of them had possession of burglar tools, etc. This instruction says:

"Possession may be sole, or jointly with another or others. In this case it is sufficient to sustain *a* conviction, if it is established by the evidence beyond a reasonable doubt either that the defendants *or one or* more of them was solely and personally found having in his possession burglar's tools or implements, at the time and place charged in the indictment, with intent to commit the crime of burglary."

Instruction No. 5 told the jury that, in order to find *any* of the defendants guilty, it was necessary to find that such defendant had possession of burglar tools with the intent to commit the crime of burglary. Instruction No. 8 merely defines the term "possession".

It does not necessarily mean that possession by one defendant would justify a verdict against all.

The word "conviction" refers to the conviction of any one whom they might find guilty. The instructions must be read together, and, when No. 8 is read in connection with No. 5, it fairly and clearly advises the jury that, in order to sustain a conviction against any one of the defendants, it is necessary to establish both elements of the crime against the defendants or defendant whom they find guilty. A fair interpretation of the instructions show that, in order to find any of the defendants guilty, it is necessary to find that *he* or they had possession of burglar tools with the intent of committing the crime of burglary. While the instruction might have been clearer, it is not sufficiently prejudicial to justify a reversal.

VIII. It is also complained that the court erred in permitting detective Pederson to testify about the conversation he had with the defendant, Edward Wilhite, shortly after his arrest. This defendant was present with the other defendants at the time they were arrested, and the evidence introduced, aside from conversations, was also applicable to the defendant Wilhite.

While it might have been better for the lower court to have sustained the objection to this conversation, we do not believe it was sufficiently prejudicial to have changed the verdict, or warrant a reversal.

IX. Defendants also complain of the admission of the testimony of officers Pastel and Greggory as to conversations had with the defendant Engler. These officers testified that in a conversation with him he asked the officers "what they got in this State for burglary". This evidence was in the nature of an admission, when considered with all other facts and circumstances, and its admission was not error.

X. It is also contended that the court erred in refusing to give the following instruction requested by the defendants:

"You are instructed that the State's case is based solely on circumstantial evidence."

It is claimed there was no "direct" evidence in this case. If this contention is correct, the instruction should have been given, because it is the rule that, where there is no direct evidence of the commission of the crime charged, and where the only evidence upon which a verdict of conviction may be justified is circumstantial, the

jury should so be instructed. State v. Blydenburg, 135 Iowa 264, loc. cit. 278, 112 N. W. 634, 14 Ann. Cas. 443; State v. Clark, 145 Iowa 731, 122 N. W. 957. The instruction given on this question is as follows:

Instruction No. 12. "Positive or direct evidence is that which establishes the truth of a fact in issue, and does not arise from inference or presumption.

"Circumstantial evidence is that which tends to prove a disputed fact by proof of other facts which have a legitimate tendency, from the usual connection of things, and from the relation of the cause and effect, to lead the mind to a conclusion that the fact exists which is sought to be established.

"It is not incumbent upon the State to prove the guilt of the defendants by direct evidence. It may be established by circumstantial evidence or by both direct evidence and circumstantial evidence. To warrant a conviction on circumstantial evidence each step in the chain of circumstances necessary to be established to prove the guilt of the accused must be proven by competent evidence beyond a reasonable doubt, and all the facts and circumstances necessary to prove guilt must be connected with each other and with the main fact sought to be proven, and all the circumstances taken together must be of such a nature as to lead to a satisfactory conclusion and produce a moral certainty that the crime charged was committed and that the accused committed it. It is not sufficient that they coincide with and render probable the guilt of the accused, but they must exclude every other reasonable hypothesis.

"In no case is it necessary in order to establish a criminal charge against a defendant that there should be direct proof of his guilt by persons who were present and saw him commit the crime. The evidence may be, and frequently is, not direct, but circumstantial."

The only substantial reference to direct evidence in this instruction is that contained in the first two or three lines thereof. The balance of the entire instruction refers to circumstantial evidence, and the reference to direct evidence merely shows the distinction between "direct" and "circumstantial" evidence. While the line between direct and circumstantial evidence is not always clear, and while in this case it may not be clearly marked in some re-

spects, we think there was sufficient direct evidence in other matters to warrant a refusal of the instruction requested.

The statements made by the defendants Urban, Lugar, and Engler, referred to in the statement of facts, were in the nature of admissions. One of the defendants was found under a desk in the law office, and the officers found a revolver in the same room. There was also evidence of pounding on the wall leading into the vault. These men were all seen at or near the place where there had been an undoubted attempt to make a hole from the adjoining room in the bank's vault. All of the defendants were seen attempting to flee from the scene of the crime. Such evidence may be on the border line between direct and circumstantial evidence.

One of the elements necessary to warrant a conviction was that the tools were burglar tools. It is not enough to prove they had possession of tools, but it must also be shown they were burglar tools. It may be conceded that the evidence tending to establish *possession* was circumstantial. The character of the tools, however, was established by direct evidence. The tools were offered in evidence, and the *direct evidence* of witnesses was introduced showing they were "burglar tools". The "direct evidence" of the character of these tools was, not only the tools themselves but also the testimony of the police officers that such tools were in fact burglar tools. This was sufficient "direct evidence" to justify a refusal of the instruction requested. There was no error therein.

We believe the evidence offered by the state was sufficient to make out a prima facie case to take it to the jury.

In accordance with our conclusion as hereinabove expressed the judgment of the lower court is affirmed.—Affirmed.

ALBERT, C. J., and STEVENS, ANDERSON, and MITCHELL, JJ., concur.