## STATE v. HILL.

No. 6254.   Decided August 12, 1941.   (116 P. 2d 392.)

*Willard Hanson,* of Salt Lake City, for appellant.

*Joseph Chez,* Atty. Gen., and *Zelph S. Calder, Zar E. Hayes,* and *Calvin I. Rampton,* Deputy Attys. Gen., for respondent.

McDONOUGH, Justice.

Frank R. Hill was convicted in the district court of the crime of obtaining property by false pretense, from which judgment of conviction he has appealed. The alleged errors relied on for reversal are directed, first, to the complaint and information charging the offense, second, to the bill of particulars and amendments thereto which the court directed the state to file in connection with the information, third, to certain evidence which was introduced, and fourth to the verdict of guilt returned.

As to the complaint and information, it is contended that the same are insufficient; that, in so far as the pleading here is authorized by the provision of our Reformed Code of Criminal Procedure (and more particularly Sec. 105-21-8 and 105-21-47 thereof) adopted by the legislature in 1935, said reformed procedure contravenes Article 1, Sec. 12 of the Constitution of the State and also the 6th Amendment to the Constitution of the United States.

The particular sections of the statute above referred to are, so far as material, as follows:

105-21-8. Charging the Offense. (1). The information or indictment may charge, and is valid and sufficient if it charges the offense for which the defendant is being prosecuted in one or more of the following ways:

"(a) By using the name given to the offense by the common law or by a statute.

"(b) By stating so much of the definition of the offense, either in terms of the common law or of the statute defining the offense or in terms of substantially the same meaning, as is sufficient to give the court and the defendant notice of what offense is intended to be charged.

"(2) The information or indictment may refer to a section or subsection of any statute creating the offense charged therein, and in determining the validity or sufficiency of such information or indictment regard shall be had to such reference." (L. 1935, Ch. 118, Sec. 1.)

"105-21-47. Forms for certain offenses. The following forms may be used in the cases in which they are applicable:

*    *    *

"False pretenses—A. B. obtained an automobile from C. D. by means of false pretenses."

The information, following closely the language of the complaint, charges the defendant with "obtaining property by false pretenses in an amount over $50 in value, committed as follows: "That the said Frank R. Hill on or about the 31st day of July, 1939, at Delta, County of Millard, State of Utah, did obtain 112,905 pounds of alfalfa hay of the value of $536.30 from Dudley and Reed Crafts by means of false pretenses."

It is clear that the information adequately complies both with the requirements of subdivision (a) of Section 105-21-8 and the requirements of Sec. 105-21-47. The contention is, however, that these sections violate the provisions of Article 1, Section 12, of our Constitution, which provides that:

"In criminal prosecutions the accused shall have the right  *   *   * to demand the nature and cause of the accusation against him, to have a copy thereof,  *   *   *."

In considering this attack on the statute, we have examined the available similar statutes of the various states having like constitutional provisions and the adjudications thereunder. We have found no state where a so-called short

form has been adopted where it has been held unconstitutional. There are three states which have provisions almost identical to ours with respect to indictments and informations. They are Iowa (see Code of Iowa 1939, Chapter 638, Sec. 13732.01 et seq.), New Mexico (see Rules of Pleading, Practice and Procedure in Judicial Proceedings in Courts other than the Supreme Court, adopted by the Supreme Court of New Mexico by authority of Chapter 84, Laws of 1933, 38 N. M., p. VII, Article 44, Sec. 35-4402 et seq.), and Rhode Island (see Public Laws of Rhode Island 1932, Chapter 1954, Section 1). See also the Code of Criminal Procedure of Louisiana (Act No. 2 of 1928, Code of Criminal Procedure) Art. 227 et seq. In each of these states the constitutionality of sections similar to those in our state quoted above has been upheld in cases involving a variety of criminal charges. Iowa: *State* v. *Henderson,* 215 Iowa 276, 243 N. W. 289 (larceny from a building in the nighttime); *State* v. *Engler,* 217 Iowa 138, 251 N. W. 88 (possession of burglary tools with intent to commit the crime of burglary); *State* v. *Keturokis,* 224 Iowa 491, 276 N. W. 600 (crime of rape); *State* v. *Evans,* 229 Iowa 932, 295 N. W. 433 (obtaining property by false pretenses). New Mexico: *State* v. *Roy,* 40 N. M. 397, 60 P. 2d 646, 110 A. L. R. 1 (crime of murder). Rhode Island: *State* v. *Smith,* 56 R. I. 168, 184 A. 494 (conspiracy to steal); *State* v. *Domanski,* 57 R. I. 500, 190 A. 854 (crime of robbery); Louisiana: *State* v. *Capaci,* 179 La. 462, 154 So. 419 (crime of murder); *State* v. *Simpson,* 184 La. 190, 165 So. 708 (obtaining money by use of confidence game).

See, also, cases from the following states having statutes of a modified nature all of which have been held constitutional: California: Penal Code, Pt. 2, Title V, Chap. II § 948 et seq. *People* v. *Wiezel,* 39 Cal. App. 2d 657, 104 P. 2d 70; *People* v. *Torp,* 40 Cal. App. 2d 187, 104 P. 2d 542; *People* v. *Dunn,* 40 Cal. App. 2d 6, 104 P. 2d 119, certiorari denied 311 U. S. 701, 61 S. Ct. 139, 85 L. Ed. ___. Illinois: (Smith-Hurd St. c. 38, Sec. 716) *People* v. *Green,*

362 Ill. 171, 199 N. E. 278; *People* v. *Gruber,* 362 Ill. 278, 200 N. E. 483; *People* v. *Flynn,* 305 Ill. App. 619, 27 N. E. 2d 669; *People* v. *White,* 307 Ill. App. 528, 30 N. E. 2d 782. Wisconsin: Statutes 1933, Secs. 348.402, 348.403; *Spoo* v. *State,* 219 Wis. 285, 262 N. W. 696. See also New York cases of *People* v. *Farson,* 244 N. Y. 413, 155 N. E. 724; and *People* v. *Bogdanoff,* 254 N. Y. 16, 171 N. E. 890, 69 A. L. R. 1378.

Without going into a detailed analysis of the constitutional question involved, we quote the language used in the Iowa case of *State* v. *Engler,* supra, and the New Mexico case of *State* v. *Roy,* supra. Both of these cases relied on the analysis and reasoning of the New York Court of Appeals in the case of *People* v. *Bogdanoff,* 254 N. Y. 16, 171 N. E. 890, 69 A. L. R. 1378, holding that the legislature might simplify the form of the indictment without violating the constitutional rights of the accused.

The question is discussed in *State* v. *Roy,* supra [40 N. M. 397, 60 P. 2d 653, 110 A. L. R. 1], in the following language:

"The defendant claims that the information in the instant case is violative of article 2, § 14, of the N. M. Const. * * *

"This constitutional provision establishes the principle that trial for a felony must be preceded by a sworn accusation. This is one of the ancient immunities and privileges of English liberty. Under such constitutional provisions, as under the common law, a person accused of crime is entitled to be advised of the crime he is charged with by an indictment or presentment by a grand jury, or an information by a judicial officer representing the state.

\* \* \*

"In New Mexico we have provided a simple means of indictment or information by which, and within the Constitution, an accusation can be presented against one accused of a crime which sufficiently identifies the charge against the accused, so that his conviction or acquittal may prevent a subsequent charge for the same offense; notify the accused of the nature and character of the crime charged against him to the end that he may prepare his defense; and enable the court upon conviction to pronounce judgment according to the right of the case.

"The form we have prescribed does not require the technical crafts-manship of an artist in rhematics for the drawing of an indictment. Validity is not sacrificed to prefection of form, nor is justice delayed or defeated by legalistic insistence upon statement of details which serve no useful purpose. *People* v. *Bogdanoff*, 254 N. Y. 16, 171 N. E. 890, 891, 69 A. L. R. 1378. We have provided that every accused shall be informed against as the defendant here insists he shall be informed against, in simple, understandable language of the crime he is charged with. This was done in the instant case.

\* \* \*

"An information or indictment is sufficient if from its language and form those elements which the Constitution guarantees to an accused are therein found.

"We quote with approval from the able majority opinion in the case of *People* v. *Bogdanoff*, supra: 'For generations attempts have been made, with varying degree of success, to simplify forms of in-dictment. Such attempts may not be thwarted by insistence upon the preservation of outworn legalistic formulas. "An indictment, then, within the meaning of the constitution, is nothing more than what it is defined to be by Blackstone" (4 Com. 302), "a written accusation, of one or more persons, of a crime or misdemeanor, pre-ferred to, and presented by, a grand jury, upon oath." *Wolf* v. *State*, 19 Ohio St. 248. We may not hold that the framers of the Constitu-tion intended that all the formalities of the old common-law indict-ments must remain forever inviolate. They intended, undoubtedly, that a written accusation of a crime must be presented by the grand jury before an accused may be held for trial upon a charge of felony. From the days of Magna Charta, the law of the land accorded an accused such protection against unfounded charges. The Legisla-ture cannot dispense with a "written accusation" by the grand jury, but it can prescribe new forms of indictments, and dispense with some of its technical formalities. See *Lougee* v. *State*, 11 Ohio 68; *State* v. *Schnelle*, 24 W. Va. 767.' "

In the Engler case [217 Iowa 138, 251 N. W. 91], the Iowa Supreme Court held:

"There is no restriction upon the Legislature as to the method in which indictments shall be presented, nor is there any prescribed form, in the Constitution, required to be followed in giving the de-fendant the information required.

"Provisions similar to that contained in our Constitution are also contained in the Federal Constitution and the Constitutions of prac-tically every state in the Union.

"The reason for the constitutional protection afforded is that no person shall be held to answer for a felony, except upon indictment or presentment of a grand jury. Before a citizen can be held for trial, there must be a sufficient investigation by the grand jury to justify and require the charge to be made in an indictment.

"The rule requiring detailed specifications and particulars in the indictment is of judicial origin, based upon the common law. This rule is of long standing and was adopted in practically all of the states, including the United States.

\*     \*     \*

"We do not mean to say that the Legislature can provide such an abbreviated form of indictment as would omit the character of a specific crime. All crimes in this state are made so by statute. The Legislature has the power to determine what constitutes a crime, and, when it has done so, it may also provide for giving the information of the crime necessary to be included in the indictment, for the information of the one accused."

The foregoing quotations, we think, succinctly state the views of the several courts which have spoken on the constitutional objection herein raised. In the light thereof it is unnecessary, in considering the constitutional sufficiency of the information before us, to determine whether a bill of particulars, provided for by Section 105-21-9 of the Criminal Procedure Statute, may or may not supply such facts as will give the accused "such information as he is entitled to under the constitution of this state" (105-21-9, Laws of Utah 1935) where the information or indictment fails so to do. See State v. *Solomon*, 93 Utah 70, 71 P. 2d 104; State v. *Jessup*, 98 Utah 482, 100 P. 2d 969. That it may do so is the holding of the courts of Iowa, New Mexico, and New York. See State v. *Engler*, supra; State v. *Roy*, supra; and People v. *Bogdanoff*, supra.

Without resort to such bill of particulars, the information in the instant case complied with those minimum requirements which the disenting opinion in the Bogdanoff case, supra [254 N. Y. 16, 171 N. E. 896, 69 A. L. R. 1378], specified, viz.,

"This legal accusation consisted of two essentials   \*   \*   \*   First, the accused is charged with having committed a crime, known to the

law; and, second, the act which he did constituting that crime is stated."

It follows that the information in this case was sufficient. In so holding as to the information here examined, we, of course, express no opinion as to whether or not each of the forms set out in Section 105-21-47, Laws of Utah 1935, meets such requirements.

In the case of *State* v. *Evans*, supra [229 Iowa, 932, 295 N. W. 434], the information "accused defendant of the crime of obtaining property by false pretenses in that, on or about October 18, 1938, he obtained from Addie Otto one Emmetsburg Investment Co-collateral Trust Note, Number 100, by false pretenses." The Iowa Supreme Court held this to be sufficient as against the contention that it failed to set out the value of the note.

That the bill of particulars furnished by the district attorney evidenced and the testimony revealed a different crime than that charged does not, in and of itself, demonstrate that the information filed did not comply with the constitutional provision invoked. It but reveals that the charging officer misapprehended the field encompassed by the statute under which the defendant was accused. By appropriate assignments of error, defendant complains, on such grounds, of his conviction.

In considering such assignments it may be helpful, at the outset, to set out the pertinent provisions of two sections of Chapter 18 of our Penal Code entitled "False Personation and Cheats."

Section 103-18-8, R. S. U. 1933, entitled "Obtaining Money by False Pretense," reads:

"Every person who knowingly and designedly, by false or fraudulent representations or pretenses, obtains from any other person any chose in action, money, goods, wares, chattels, effects or other valuable thing, with intent to cheat or defraud any person of the same, if the value of the property so obtained does not exceed $50, is punishable as in cases of petit larceny, and when the property so obtained is of the value of more than $50, the person so offending is punishable as in cases of grand larceny."

This statute has been a part of the penal code since prior to 1898, Revised Statutes of Utah 1898, Section 4397.

The succeeding section, entitled "Obtaining Credit by False Representation," 103-18-9 provides:

"(1) Any person who knowingly makes or causes to be made, either directly or indirectly, or through any agency whatsoever, any false statement in writing respecting the financial condition or ability to pay of himself or any other person, firm or corporation in whom he is interested, or for whom he is acting, and thereby fraudulently procures in any form whatsoever either the delivery of personal property, the payment in cash, the making of a loan or credit, the extension of a credit, the discount of an account receivable or the making, acceptance, discount or indorsement of a bill of exchange or of a promissory note, either for the benefit of himself or such person, firm or corporation * * * is guilty of a misdemeanor, and shall be punished by a fine of not more than $1,000 or by imprisonment in the county jail for not more than six months, or by both."

This statute was first enacted in its present form in 1913. See Section 4397x, Laws of Utah 1913, p. 55. The 1913 enactment was amendatory of the same numbered section of Compiled Laws of Utah 1907, a statute of similar import first enacted in 1905. See Section 1, Chapter 88, Laws of Utah 1905.

At the time of the enactment of the 1913 statute, Section 4861, Compiled Laws of Utah 1907, provided that:

"False pretenses. Evidence in writing or proof by two witnesses. Upon a trial for having with an intent to cheat or defraud another designedly, by any false pretense, obtained the signature of any person to a written instrument, or having obtained from any person any money, personal property, or valuable thing, the defendant shall not be convicted if the false pretense shall have been expressed in language, unaccompanied by a false token or writing, unless the pretense or some note or memorandum thereof be in writing, subscribed by or in the handwriting of the defendant, or unless the pretense be proved by the testimony of two witnesses, or that of one witness and corroborating circumstances; but this section shall not apply to a prosecution for falsely representing or personating another, and, in such assumed character, marrying, or receiving any money or property."

This provision was likewise in existence since 1898 (See Section 4861, Revised Statutes of Utah 1898) and has since been in continuous effect. It now appears as Section 105-32-17, R. S. U. 1933.

Notwithstanding the somewhat stringent requirement of proof required to convict of the crime, as defined, of obtaining money by false pretenses, the legislature in enacting the later-enacted statute, now in 103-18-9, R. S. U. 1933, provided that the type of false representation there dealt with should be punished criminally only when *made in writing*. And the species of representation legislated about was that respecting "the financial condition or ability to pay" of the one making the representation or of some person, firm or corporation for whom he was acting or in whom he was interested. It seems clear that any oral representation of this character unaccompanied by any independent false representation of an existing fact or any false token is not ground for criminal action. We need not inquire into whether or not prior to the enactment of Sec. 103-18-9 such representation was encompassed by 103-18-8. If it was, then by the later enactment the earlier was modified. If not, then the later statute covers a field not theretofore the subject of criminal legislation, and its terms bound that field. See *Commonwealth v. Boyd*, 181 Ky. 382, 205 S. W. 390, wherein it is held that a statute practically identical to 103-18-9, repealed inconsistent provisions of a statute of similar import to 103-18-8. Compare: *People v. Snyder*, 110 App. Div. 699, 97 N. Y. S. 469; and *People v. Rothstein*, 180 N. Y. 148, 72 N. E. 999, 1 Ann. Cas. 978; *State v. Harris*, 116 Minn. 401, 133 N. W. 980.

In the instant case, the final bill of particulars proffered in conformity with the proof reads:

"That on or about the 31st day of July, 1939, at Delta, Millard County, Utah, Dudley Crafts discussed with the Defendant, Frank R. Hill, the sale of certain hay then belonging to Reed Crafts and I. R. Parker, which Dudley Crafts was then authorized to sell for the said owners; that at that time the defendant was the Vice-Pres-

ident and manager of the Hill Brothers Alfalfa Milling Company, a corporation; .That in the course of the said discussion Dudley Crafts said to the defendant, 'I want to know what your financial condition is before we let you have the hay,' and said further in substance that they absolutely would not let the defendants company have the hay unless its financial condition was such that they (Crafts) were sure to get their money. That in answer to the above the deendant said, "This time, Dudley we are going to tell you the truth about it, the fact is, we have enough outstanding accounts to pay every dollar we owe.' That the defendant said in substance that the Company, the said Hill Bros. Alfalfa Milling Company, was in good financial condition, and had enough outstanding accounts receivable to pay all its obligations. That the above statement of defendant was false and untrue, and said company was then solvent all of which defendant well knew: that Dudley Crafts relied upon the statements of the defendant as aforesaid and sold to the said Hill Bros. Alfalfa Milling Company 112,905 pounds of hay belonging to Reed Crafts and I. R. Parker for the sum of $536.30; that the same has not been paid except the sum of approximately $246.00.  *   *   *"

It is contended first that this bill of particulars does not set out a crime of obtaining money or property by false pretenses contrary to the provisions of Section 103-18-8, R. S. U. 1933, but rather that its specifications evidence the obtaining credit by false representation, which if evidenced by a statement in writing would be a crime under Section 103-18-9, R. S. U. 1933.

It is elemental that where a. bill of particulars is furnished it may not set out a different crime than. that charged in the information. *People* v. *Bogdanoff,* supra. There the court said:

"None the less the conviction cannot stand if the defendants by the form of the indictment have been precluded from challenging the assertion of the state that the crime with which they have been charged by accusation of the grand jury is the same crime for which the bill of particulars has been filed, and for which they have been tried and convicted."

It is palpable that this bill of particulars, detailing the evidence as to the representation and the manner of its being made, shows, first, an oral statement, second, a statement of facts which constitute a representation concerning

"the financial condition or ability to pay" of the Hill Brothers Alfalfa Milling Company. Indeed, the pleader characterized the representation on the bill itself in stating:

"That the defendant said in substance that the Company * * * was in good financial condition and had enough outstanding accounts to pay all its obligations."

This is charging a misrepresentation almost in the words of Section 103-18-9.

As stated hereinabove, the crime charged by the information is that condemned by Section 103-18-8. Should we consider the ambit of such information sufficiently ambulant to encompass specifications showing a violation of Sec. 103-18-9, then compliance with the invoked ■ constitutional provision would require a holding that the bill of particulars may aid the information in furnishing the accused "such information as he is entitled to under the constitution of this state." Even so considered, an examination of such specifications and of the evidence adduced at the trial fail to show an essential element of the crime defined by Section 103-18-9, R. S. U. 1933, to wit: "false statement in writing." Hence the verdict and judgment cannot stand.

The judgment is reversed and the cause remanded with instructions to dismiss the complaint.

WOLFE and PRATT, JJ., concur.

MOFFAT, C. J., and LARSON, J., concur in the result.