**STATE of Iowa, Appellee,**

v.

**James Ray PETERSON, Appellant.**

**No. 53977.**

Supreme Court of Iowa.

April 13, 1972.

Jesse, LeTourneau & Johnston, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Allen J. Lukehart, Asst. Atty. Gen., Ray A. Fenton, County Atty., and Harold Young, Asst. County Atty., for appellee.

MOORE, Chief Justice.

On this appeal following his conviction and sentence for possession of burglar's tools in violation of Code section 708.7 defendant, James Ray Peterson, asserts the trial court erred in (1) overruling his motion for mistrial and (2) not giving his requested instruction and in giving instruction 11 without advising the jury the State's case rested solely upon circumstantial evidence. We affirm.

About 6:30 a. m., August 8, 1969 an Iowa Highway Patrol airplane pilot clocked a copper-colored Dodge Duster automobile exceeding the speed limit on the highway between Boone and West Des Moines in the vicinity of Granger. He radioed ground personnel who attempted to stop the car. The automobile slowed down when signaled but did not stop. A high speed chase began and the pursued car was ultimately abandoned in a driveway at 420 Valhigh Drive in West Des Moines. The pilot observed the route of the Dodge automobile and observed the occupants jump and run toward Grand Avenue. He later observed a person walking west on Grand Avenue. Upon being so advised a ground unit arrested this person, defendant herein. He told the officers he was walking to a friend's house on Church Street. There is no Church Street in West Des Moines.

Two officers who originally tried to stop the fleeing car both identified defendant as the front seat passenger therein. Robert Allen Coleman was identified as the driver. Neither owned the vehicle. During the course of flight the car ran two roadblocks and the occupants were observed throwing objects from the car.

The route which the car took was found to be strewn with an array of tools. Included were a crowbar, a truck tire iron, a keyhole saw, a stone worker's hammer and a large prybar. A search of the immediate area of the abandoned car revealed a set of chisels taped together, a sledge hammer, a broken mall, and a money sack. A search (by warrant) of the car revealed a screw driver, a flashlight, chisels, a keyhole saw and pliers. On trial a state agent testified such tools are used in the commission of burglary.

Prior to defendant's arrest the manager of Lawson's Super Valu Store in Boone discovered it had been broken into and the safe battered but not opened. Several tools were found at the scene. The money bag found near the abandoned car was stamped "Lawson's Inc." It was the same as money bags used at the Boone store.

■ I. At the close of the State's case defense counsel moved for a mistrial. He stated that during the greater portion of the two-day trial the assistant county attorney caused to be brought into the courtroom, in addition to some thirty-six exhibits which were marked and received in evidence, several pieces of a safe with obvious acetylene torch markings, various items of clothing and several bottles and containers. They bore F.B.I. markings. He stated these items were in two pasteboard boxes and that all said items were intermingled with the various tools which were eventually offered as exhibits. He further stated these articles were in plain sight of the jurors and thus defendant had been denied a fair trial.

In resistance the assistant county attorney stated the trial had started before the exhibits were returned in the pasteboard boxes by the F.B.I. He stated the boxes were in the courtroom but behind the reporter's desk and not in sight of the jurors. He further stated the boxes were removed from the courtroom after he had taken the exhibits therefrom.

Thus the record consists of conflicting statements of counsel. Defense counsel offered no proof other than his own statement of prejudice.

In denying defendant's motion for mistrial the trial judge stated:

"Well, the Court doesn't find that there is, under the facts and the conduct of the trial as observed by the Court, that there is any prejudice here as against the defendant. The Court feels that under all circumstances the State would have to have some latitude in handling proposed exhibits.

"The Court is going to overrule the motion upon each ground."

We agree with this statement made in defendant-appellant's brief: "The record is not what one might wish." The record is indeed scant but we need not determine whether there was misconduct by the prosecutor. If we assume, without deciding, it was, we recognize we have frequently held misconduct of counsel does not require a new trial unless it appears to have been so prejudicial as to deprive defendant of a fair trial; such a trial does not necessarily mean an absolutely perfect one; the trial court is in a much better position than we to judge whether claimed miconduct of counsel is prejudicial; considerable discretion is allowed the trial court in passing on such a matter and we will not interfere with its determination unless it clearly appears there has been a manifest abuse of that discretion. State v. Mercer, 261 Iowa 371, 374, 375, 154 N.W.2d 140, 142; State v. Barton, 258 Iowa 924, 931, 932, 140 N.W. 2d 886, 891 and citations. No abuse of trial court's discretion is shown here.

■ II. Defendant's second assigned error is the court erred in not instructing the jury the State's case rested solely on circumstantial evidence. He requested such an instruction and objected to instruction 11 which defined and referred to both direct and circumstantial evidence. Instruction 11 was the same as instruction 501.13 of the Iowa Uniform Jury Instruction. It need not be set out in this opinion. Its sufficiency is not questioned. The problem raised by defendant is whether the State's case was based entirely on circumstantial evidence.

Factually State v. Engler, 217 Iowa 138, 251 N.W. 88 is on all fours with the case at bar. Defendant was charged with possession of burglar's tools and made the

same contention as above stated. The court refused to give the requested instruction and gave one almost identical with instruction 11 here.

At page 152 of 217 Iowa 138, pages 94, 95 of 251 N.W. 88, we say:

"One of the elements necessary to warrant a conviction was the tools were burglar tools. It is not enough to prove they had possession of tools, but it must also be shown they were burglar tools. It may be conceded that the evidence tending to establish *possession* was circumstantial. The character of the tools, however, was established by direct evidence. The tools were offered in evidence, and the *direct evidence* of witnesses was introduced showing they were 'burglar tools'. The 'direct evidence' of the character of these tools was, not only the tools themselves, but also the testimony of the police officers that such tools were in fact burglar tools. This was sufficient 'direct evidence' to justify a refusal of the instruction requested. There was no error therein."

We have the same type of direct evidence in the case at bar. Further direct evidence was the identification by police officers of defendant as a passenger in the car in flight from which tools were thrown. Tools, also identified as burglar tools, were found in the same car.

With both direct and circumstantial evidence in the record the trial court did not err in refusing defendant's requested instruction and giving instruction 11. State v. Panther, 230 Iowa 1115, 300 N.W. 291; State v. Ferguson, 222 Iowa 1148, 270 N.W. 874.

We find no reversible error.

Affirmed.

All Justices concur.